IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SURGIQUEST, INC. | § | |
| | § | |
| Plaintiff, Counterdefendant, | § | Civil Action No. 1:14-CV-00382-GMS |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| LEXION MEDICAL, LLC, | § | |
| | § | |
| Defendant, Counterclaimant. | § | |

# [PROPOSED] FINAL JURY INSTRUCTIONS

## TABLE OF CONTENTS

**Page**

1. INTRODUCTION ................................................................................................ 1

2. EVIDENCE DEFINED ...................................................................................... 3

3. DIRECT AND CIRCUMSTANTIAL EVIDENCE ......................................... 4

4. CONSIDERATION OF EVIDENCE ............................................................... 5

5. STATEMENTS OF COUNSEL ...................................................................... 6

6. CREDIBILITY OF WITNESSES .................................................................. 7

7. EXPERT TESTIMONY ................................................................................... 9

8. DEPOSITIONS AS SUBSTANTIVE EVIDENCE ...................................... 10

9. NUMBER OF WITNESSES ......................................................................... 11

10. BURDEN OF PROOF; PREPONDERANCE OF THE EVIDENCE ........... 12

11. FALSE ADVERTISING ............................................................................... 13

12. ELEMENTS OF FALSE ADVERTISING ................................................... 15

13. ELEMENT ONE – FALSE OR MISLEADING STATEMENTS
    [**DISPUTED IN PART**] ........................................................................... 16

14. ELEMENT TWO – DECEPTION OR A TENDENCY TO DECIEVE
    [**DISPUTED IN PART**] ........................................................................... 22

15. ELEMENT THREE – MATERIALITY [**DISPUTED IN PART**] .............. 26

16. ELEMENT FOUR – TRAVEL IN INTERSTATE COMMERCE ................. 29

17. ELEMENT FIVE – INJURY OR LIKELIHOOD OF INJURY
    [**DISPUTED IN PART**] ........................................................................... 30

18. DECEPTIVE TRADE PRACTICES ............................................................ 33

19. UNFAIR COMPETITION UNDER DELAWARE LAW [**DISPUTED**] ..... 34

20. DAMAGES – FALSE ADVERTISING UNDER FEDERAL LANHAM ACT
    AND COMMON LAW UNFAIR COMPETITION [**DISPUTED**] ............. 36

21. PUNITIVE DAMAGES UNDER DELAWARE COMMON LAW ............... 49

22. DELIBERATION AND VERDICT .............................................................. 51

EAST\141593792.1

# 1.      INTRODUCTION[1]

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read. You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

I will explain the positions of the parties and the law you will apply in this case.

Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

Members of the Jury, it is important that you bear in mind the distinction between your duties and my duties. You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. You are the sole judges of the facts. It is your judgment, and your judgment alone, to determine what the facts are, and nothing I have said or done during this trial was meant to influence your decisions about the facts in any way.

---

[1] The source of the first eight pages of instructions are the Uniform Jury Instructions in the United States District Court for the District of Delaware

Your second duty is to take the law that I give you, apply it to the facts, and decide if, by a preponderance of the evidence, the defendants are liable.

Now, as far as my duty is concerned, I have the duty of advising you about the law that you should apply to the facts as you find them. You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy. You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. You must accept them despite how you feel about their wisdom. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.[2]

---

[2] Uniform Jury Instructions in the United States District Court for the District of Delaware; The Honorable Judge Sleet, Miscellaneous Jury Instructions (Rev: 1/18/06), at 1-2.

## 2.      EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. My comments and questions are not evidence.

During the trial I may have not let you heard the answers to some of the questions the lawyers asked. I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.[3]

---

[3] Uniform Jury Instructions in the United States District Court for the District of Delaware; The Honorable Judge Sleet, Miscellaneous Jury Instructions (Rev: 1/18/06), at 2-3.

### 3.   DIRECT AND CIRCUMSTANTIAL EVIDENCE

You have heard the terms direct and circumstantial evidence.

Direct evidence is evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.[4]

---

[4] Uniform Jury Instructions in the United States District Court for the District of Delaware; The Honorable Judge Sleet, Miscellaneous Jury Instructions (Rev: 1/18/06), at 3.

### 4.    CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.[5]

---

[5] Uniform Jury Instructions in the United States District Court for the District of Delaware; The Honorable Judge Sleet, Miscellaneous Jury Instructions (Rev: 1/18/06), at 4.

### 5.    STATEMENTS OF COUNSEL

A further word about statements and arguments of counsel. The attorney's statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented. If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent with the bounds of the law. An attorney may argue all reasonable conclusions from evidence in the record. It is not proper, however, for an attorney to state an opinion as to the true or falsity of any testimony or evidence. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.[6]

---

[6] Uniform Jury Instructions in the United States District Court for the District of Delaware; The Honorable Judge Sleet, Miscellaneous Jury Instructions (Rev: 1/18/06), at 4.

## 6.  CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. You should consider each witness' means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness' biases, prejudices, or interests; the witness' manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at trial. You have the right to distrust such witness' testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.[7]

---

[7] Uniform Jury Instructions in the United States District Court for the District of Delaware; The Honorable Judge Sleet, Miscellaneous Jury Instructions (Rev: 1/18/06), at 4-5.

## 7.    EXPERT TESTIMONY

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.[8]

---

[8] Uniform Jury Instructions in the United States District Court for the District of Delaware; The Honorable Judge Sleet, Miscellaneous Jury Instructions (Rev: 1/18/06), at 6.

## 8.      DEPOSITIONS AS SUBSTANTIVE EVIDENCE

During this trial, you have heard testimony from the playing of videotape excerpts or reading of written excerpts from depositions. A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness testified in person here in the courtroom.[9]

---

[9] Final Jury Instructions in Shelbyzyme LLC v. Genzyme Corp. (D.Del., Civil Action No. 09-768-GMS) (D.I.183) (7/13/12)

## 9.     NUMBER OF WITNESSES

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.[10]

---

[10] Uniform Jury Instructions in the United States District Court for the District of Delaware; The Honorable Judge Sleet, Miscellaneous Jury Instructions (Rev: 1/18/06), at 6.

## 10.      BURDEN OF PROOF; PREPONDERANCE OF THE EVIDENCE

This is a civil case. Plaintiff has the burden of providing his claims and damages by what is called a preponderance of the evidence. Proof by a preponderance of the evidence means proof that something is more likely true than not. It means that certain evidence, when compared to the evidence opposed to it, has the more convincing force and makes you believe that something is more likely true than not.

Preponderance of the evidence does not depend on the number of witnesses. If the evidence as to a particular element or issue is evenly balanced, the party has not proved the element by a preponderance of the evidence and you must find against that party. In determining whether any fact has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who called them and all exhibits received into evidence regardless of who produced them.

Those of you who are familiar with criminal cases will have heard the term proof beyond a reasonable doubt. That burden does not apply in a civil case and you should therefore put it out of your mind in considering whether or not plaintiff has met his burden of proof on various issues.[11]

---

[11] Uniform Jury Instructions in the United States District Court for the District of Delaware; The Honorable Judge Sleet, Miscellaneous Jury Instructions (Rev: 1/18/06), at 6-7.

## 11.    FALSE ADVERTISING

Each party has alleged that the other engaged in false advertising under federal law also known as the United States Lanham Act.  To be considered false advertising under the Lanham Act, there must be a false or misleading misrepresentation that is made in commercial advertising or promotion, regarding the nature, characteristics or qualities of one's own product or another's product.[12]  For a false or misleading statement to violate the Lanham Act, it must be "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within the industry."[13]  The level of circulation required to constitute advertising and promotion will vary from industry to industry and from case to case.[14]  The Lanham Act does not mandate the form that such statement must take.[15]  For example, oral statements by a company's sales representatives concerning a product may constitute 'commercial advertising or promotion' under the Lanham Act if disseminated sufficiently to the relevant purchasing public within the relevant industry.[16]  Where a number of separate, unique communications are made to individual

---

[12] 15 U.S.C. § 1125(a)(1)(B).

[13] Eli Lilly & Co. v. Roussel Corp., 23 F. Supp. 2d 460, 480 (D.N.J. 1998) ("[C]ourts have held that commercial advertising or promotion consists of four elements: (1) commercial speech (2) by a defendant in commercial competition with the plaintiff (3) for the purpose of influencing customers to buy the defendant's goods or services and (4) disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within the industry."); Synthes, Inc. v. Emerge Medical, Inc., 25 F. Supp. 3d 617, 717 (E.D. Pa. 2014) ("[a]t best, then, Synthes has only established that Emerge made allegedly false statements to some customers or potential customers of Emerge and not that Emerge has widely disseminated such statements throughout the relevant market.")

[14] Am. Needle & Novelty, Inc. v. Drew Pearson Mktg., Inc., 820 F.Supp. 1072, 1077–78 (N.D. Ill. 1993) ); Classic Commc'ns, Inc. v. Rural Tel. Serv. Co., Inc., 956 F. Supp. 910, 920 (D. Kan. 1997) ("The court does not agree that all, or even most, of Classic's cable customers need to have been misinformed.  Instead, Classic need only allege something more than a few isolated misrepresentations to trigger Lanham Act protection.")..

[15] See Callmann on Unfair Competition, Trademarks and Monopolies, 5:16 (4th ed.).

[16] Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F.Supp.2d 384 (2009) ( "Courts have consistently held that oral statements by a company's sales representative concerning a product constitute 'commercial advertising or promotion' under the Lanham Act." , quoting, Zeneca Inc. v. Eli Lilly & Co., No. 99–1452, 1999 WL 509471, at *31 (S.D.N.Y. July 19, 1999).Zeneca Inc. v. Eli Lilly Co., No. 99-1452, 1999 WL 509471, at *31 (S.D.N.Y. July 19, 1999); Florida Breckenridge, Inc. v. Solvay Pharms., Inc., No. 97-8417-CIV, 1998 WL 468753, at *7-8 (S.D. Fla. Mar. 18, 1998); Classic Commc'ns, Inc. v. Rural Tel. Serv. Co., Inc., 956 F. Supp. 910, 920 (D. Kan. 1997) ("The court does not agree that all, or even most, of Classic's cable customers need to have been misinformed. Instead, Classic need only allege something more than a few isolated misrepresentations to trigger Lanham Act protection."); Medscript Pharmacy, LLC v. My Script, LLC, 77 F. Supp. 3d 788, 795 (N.D. Ill. 2015) (denying

customers, but these communications share the same competitive approach as part of an organized campaign to penetrate the marketplace, you may view the communications in the aggregate as a single advertising campaign.[17]  Similarly, press releases and sales presentations may qualify as a commercial advertisement or promotion if they are sufficiently disseminated to the relevant purchasing public within the relevant industry.[18]

In some cases, a product name can also qualify as a false or misleading statement of fact.[19]  But an omission or failure to disclose a fact about a commercial product is not considered false advertising under the Lanham Act.

---

12(b)(6) motion to dismiss Lanham Act false advertising claim; finding that if similar false statement about competitor had been made by defendant's agents in one-on-one conversations with a sufficient number of individuals in the customer pool, the conversations as a group would constitute advertising)..

[17]  See Callmann on Unfair Competition, Trademarks and Monopolies, 5:16 (4th ed.); Reed Constr. Data Inc. v. McGraw-Hill, Inc., 49 F. Supp. 3d 385, 411 (S.D.N.Y 2014), aff'd, 638 F. App'x. 43 (2nd Cir. Jan. 2, 2016);

[18] Summit Tech., Inc. v. High-Line Med. Instruments, Co., 933 F. Supp. 918, 936 (C.D. Cal. 1996) (indicating that affirmative claim in press release is actionable under Lanham Act); Seven-Up Co. v. Coca-Cola, 86 F.3d 1379, 1385 (5th Cir. 1996) (sale presentation to 11 bottlers considered advertising).

[19] *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,* 290 F.3d 578 (3rd Cir. 2002); *Warner-Lambert Co. v. Breathasure, Inc.,* 204 F.3d 87, 97 (3d. Cir. 2000).

## 12.    ELEMENTS OF FALSE ADVERTISING

That said, "To establish a claim for false advertising, a Lanham Act plaintiff must prove five elements" by a preponderance of the evidence

(1) that the defendant has made false or misleading statements as to his own product [or another's];

(2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience;

(3) that the deception is material in that it is likely to influence purchasing decisions;

(4) that the advertised goods traveled in interstate commerce; and

(5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.[20]

The burden rests with the plaintiff.[21]  You must evaluate the elements for each allegedly false or misleading statement.[22]  If a party meets its burden as to any one allegedly false or misleading statement by a preponderance of the evidence, then you may find the other party engaged in false advertising as to that particular statement.

---

[20] Groupe SEB USA, Inc. v. Euro-Pro Operating LLC, 774 F.3d 192, 198 (3rd Cir. 2014); Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co., 290 F.3d 578, 590-91 (3rd Cir. 2002)
[21] Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co., 290 F.3d 578, 590-91 (3rd Cir. 2002)
[22] Groupe SEB USA, Inc. v. Euro-Pro Operating LLC, 774 F.3d 192, 198 (3rd Cir. 2014) (affirming district court's "analy[sis] [of] the two advertising claims at issue separately").

### 13.   ELEMENT ONE – FALSE OR MISLEADING STATEMENTS

A party can prevail in a false advertising action if it proves that the defendant's advertising statement is either: (1) false on its face or literally false; or (2) literally true or ambiguous, but is still likely to mislead and confuse consumers.[23]   There need not be a direct comparison to a competitor for a statement to be actionable.[24]

### Literal Falsity

In deciding whether an advertising claim is literally false, you must decide first whether the claim conveys an unambiguous message and second whether that unambiguous message is false.[25]   Only an unambiguous message can be literally false.[26]   The greater the degree to which a message relies upon the viewer to integrate its components and draw the apparent conclusion the less likely it is that a finding of literal falsity will be supported.[27]   [This means, if a statement is ambiguous or susceptible of more than one plausible meaning, it cannot be literally false.[28]][29]

---

[23] Schering-Plough Healthcare Products, Inc., v. Neutrogena Corp., Civ. No. 09-642-SLR, 2010 WL 2788240 (D. Del. July 15, 2010), citing, Castrol, Inc. v. Pennzoil Co., 987 F.2d 939, 943 (3d Cir. 1993); Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co., 290 F.3d 578, 586 (3rd Cir. 2002) ("Liability arises  if the commercial message or statement is either (1) literally false or (2) literally true or ambiguous, but has the tendency to deceive consumers") (citation omitted); Groupe SEB USA, Inc. v. Euro-Pro Operating LLC, 774 F.3d 192, 198 (3rd Cir. 2014).
[24] Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 946 (3rd Cir. 1993)
[25] Groupe SEB USA, Inc. v. Euro-Pro Operating LLC, 774 F.3d 192, 198 (3rd Cir. 2014).
[26] Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d 578 (3rd Cir. 2002); Schering-Plough Healthcare Prod., Inc. v. Neutrogena Corp., 702 F. Supp. 2d 253 (D. Del. 2010).
[27] Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d 578, 587 (3rd Cir. 2002).
[28] *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 199–200 (3d Cir. 2014) ("The claim is also unambiguous because grams per shot is a unit of measurement provided by the IEC, the leading independent publisher of standards for electrotechnology, including steam irons. Thus, there is no 'apparent conclusion' to be drawn about this claim's meaning,…, nor is its meaning 'balanced between *several plausible meanings*,'….There is only one available conclusion and  *only one plausible meaning*—the claim means exactly what the reference on the packaging says it does.") (internal citations omitted) (emphasis added); Synthes, Inc. v. Emerge Medical, Inc., 25 F. Supp. 3d 617, 716 (E.D. Pa. 2014) ("However, 'only an unambiguous message can be literally false;' if the message is susceptible of more than one meaning, the complainant cannot assert literal falsity.") (quoting Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 943 (3d Cir. 1993); *see also Clorox Co. Puerto Rico v. Proctor & Gamble Commercial*

In some cases, a false statement is explicit or false on its face.  In other cases, a statement is false because it necessarily implies other messages that are literally false.[30]  A message conveyed by necessary implication is one where the audience would consider the advertisement in its entirety and would recognize the message as being made as readily as it if had been explicitly stated.[31]  If an advertising claim is untrue, it must be deemed literally false.[32]

Although the plaintiff normally has the burden to demonstrate that the defendant's advertising claim is false, you may find that a completely unsubstantiated advertising claim by the defendant is *per se* false without additional evidence from the plaintiff to that effect.[33]  The message conveyed by an advertising claim must be substantiated by sufficiently reliable tests.[34]

---

*Co.*, 228 F.3d 24, 35 (1st Cir. 2000) (["A] factfinder might conclude that the message conveyed by a particular advertisement remains so balanced between *several plausible meanings* that the claim made by the advertisement is too uncertain to serve as the basis of a literal falsity claim, though even in that case it could still form the basis for a claim that the advertisement is misleading") (emphasis added).

[29] **LEXION OBJECTION**: SurgiQuest's relies on Group SEB which essentially reflect that a term must be read in context in which it is used; however, Surgiquest's proposed instruction is devoid of such language, would extract a term out of its advertising context and as a result confuse the jury as to the proper analysis.  The words, marks and claims at issue should only be considered in the context in which they are used. *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 252–53 (3d Cir. 2011) ("[W]e are not dealing with those words in isolation. This is not a trademark case….We are obligated in this false advertising case under § 43(a)(1)(B) to look at the words 'Havana Club' in the context of the entire accused advertisement...."). While *Synthes* is accurately cited, neither *Castrol, Group SEB*, or *Novartis* delineate "unambiguous" in the fashion proposed.  Further, even subsequent case law in the Eastern District of Pennsylvania does not follow that proposition, but instead employs the language from Novartis which appears in the language proposed by Lexion in the prior sentence. See Synygy, Inc. v. ZS Associates, Inc, 110 F.Supp.3d 602 (E.D. Pa. 2015) (A 'literally false' message may be either explicit or conveyed by necessary implication when, underlining considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." Novartis Consumer Health, 290 F.3d at 586–87 (citation and internal quotation omitted). "[O]nly an unambiguous message can be literally false. The greater the degree to which a message relies upon the viewer ... to integrate its components and draw the apparent conclusion ... the less likely it is that a finding of literal falsity will be supported." Id. at 587 (emphasis added, citations and internal quotation omitted).

[30] *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,* 290 F.3d 578 (3rd Cir. 2002)

[31] *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,* 290 F.3d 578 (3rd Cir. 2002)

[32] Castrol, Inc. v. Pennzoil Co., 987 F.2d 939, 943 (3d Cir. 1993)

[33] Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co., 290 F.3d 578, 590 (3rd Cir. 2002)

[34] Schering-Plough Healthcare Products, Inc. v. Neutrogena Corp., 702 F.Supp.2d 266, 276 (D. Del. 2010); Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d 578, 590 (3rd Cir. 2002) ("We therefore conclude that the message of special formulation for nighttime relief that is necessarily implied from the MNTS name is a completely unsubstantiated advertising claim, and that the District Court did not clearly err by concluding that this claim is per se false.")

The sufficiently reliable standard assumes that the test in question, if reliable, would prove the proposition for which they are cited.[35]  The party challenging an advertising claim has the burden to demonstrate by a preponderance of the evidence that the advertiser has not proven that its tests were reliable.[36]

[Once a plaintiff proves literal falsity of an advertising claim, you may presume that all other aspects or elements of a false advertising claim have been established and you may find the defending party liable for false advertising without considering the advertising claim's impact on the purchasers.[37]][38]

---

[35] Schering-Plough Healthcare Products, Inc. v. Neutrogena Corp., 702 F.Sup.2d 266, 276 (D. Del. 2010).

[36] Schering-Plough Healthcare Products, Inc. v. Neutrogena Corp., 702 F.Sup.2d 266, 276 (D. Del. 2010); Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384, 468 (D.N.J. 2009) ("the Plaintiff must show that the underlying studies upon which the representations are based are 'not sufficiently reliable to permit one to conclude with reasonable certainty that they established the claim made.'"); McNeil–P.C.C, Inc. v. Bristol–Myers Squibb Co., 938 F.2d 1544, 1549 (2d Cir.1991).

[37] Schering-Plough Healthcare Products, Inc. v. Neutrogena Corp., Civ. No. 09-642-SLR, 2010 WL 2788240 (D. Del. June 7, 2010)("[O]nce plaintiff proves literal falsity of an advertisement, the court may presume all other elements of the §43(a) claim"); Schering-Plough Healthcare Products, Inc. v. Neutrogena Corp., Civ. No. 09-642-SLR, 2010 WL 2340226 (D. Del. June 7, 2010) (rejecting defendant's argument that even amidst a finding of explicit literal falsity, plaintiff must also demonstrate materiality, actual deception or a tendency to deceive and a likelihood of injury." (citation omitted); Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co., 290 F.3d 578, 586 (3rd Cir. 2002) ("If a plaintiff proves that the challenged commercial claims are 'literally false," a court may grant relief without considering whether the buying public was actually misled." (citation omitted)).

[38] **SURGIQUEST OBJECTION**: SurgiQuest objects to this portion of the instruction as an incomplete and misleading statement of the law.  Under Third Circuit precedent, a party seeking monetary damages cannot satisfy all elements of a Lanham Act false advertising claim upon a mere upon a showing of literal falsity.  The Third Circuit first articulated the distinct legal requirements for establishing a false advertising claim depending upon the relief sought (monetary damages versus injunctive relief) in Parkway Baking Co. v. Freihofer Baking Co., 255 F.2d 641 (3d Cir. 1958): "In cases of injunction, however, there seems to be no requirement that purchasers actually be deceived, but only that the false advertisements have a tendency to deceive....While it would be going too far to read the requirement of customer reliance out of this section so far as damages are concerned, we believe that this is a recognition that, as with most equitable relief by way of injunction, Section 43(a) may be asserted upon a showing of likelihood of damage without awaiting the actuality." Id. at 649.  Subsequent decisions have consistently confirmed that a Lanham Act plaintiff seeking monetary damages must  prove actual consumer deception and injury to meet its burden of proof.  Warner-Lambert Co. v. Breathasure, Inc., 204 F.3d 87, 92 (3d Cir. 2000) ("a plaintiff seeking damages under § 43(a) must establish customer reliance"); Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 943 (3d Cir. 1993) (recognizing that where the advertisement is shown to be literally false, the court may enjoin it without reference to its impact on the consumer) (citing McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co., 938 F.2d 1544, 1549 (2d Cir. 1991)); Schering-Plough Healthcare Prods., Inc. v. Neutrogena Corp., 2010 WL 2788240, at *3 (D. Del. Jul. 15, 2010) ("It would seem that the Castrol court contemplated injunctive relief when it directed courts to presume injury upon a showing of literal falsity....In this case, plaintiff seeks an injunction prohibiting

A plaintiff must prove either literal falsity or consumer confusion, but not both.[39] Where literal falsity is demonstrated, consumer confusion is presumed.[40]

**Misleading Statements**

If a party fails to prove that the other party's advertising statement is literally false, it can still prevail on a false advertising claim by proving that the statement is misleading or impliedly false.[41] A statement is misleading if it is true or ambiguous but has the tendency to deceive a substantial portion of consumers.[42] When the challenged advertisement is implicitly rather than explicitly false its tendency to violate the Lanham Act by misleading, confusing or deceiving should be tested by public reaction.[43]

[In this case, the relevant audience for determining consumer deception is surgeons and hospitals. A target audience's special knowledge of a class of products is should

---

promulgation of a literally false statement. Therefore, there is no apparent tension presented here by a presumption of damages."); *see also Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 481 (D.N.J. 2009) ("a plaintiff seeking monetary damages must show more than a mere presumption of actual customer confusion based on a finding of literal falsity"); *Labware, Inc. v. Thermo Labsystems, Inc.*, 2005 WL 1541028, at *12 (E.D. Pa. June 29, 2005) ("Typically, the final element of a Lanham Act claim requires proof of 'a likelihood of injury to the plaintiff in terms of declining sales, [or] loss of good will.' But where, as here, a plaintiff seeks monetary rather than injunctive relief, the plaintiff must show "actual damages rather than a mere tendency to be damaged.") (quoting *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 921 (3rd Cir. 1990)).

**LEXION'S RESPONSE:** The instruction here concerns liability not damages so the reference to what may be required or not required for damages in this section is misplaced and confusing for jurors. In Schering-Plough Healthcare Products, Inc. v. Neutrogena Corp., Civ. No. 09-642-SLR, 2010 WL 2788240 (D. Del. July 15, 2010) , after carefully analyzed Third Circuit law, like *Castrol*, and subsequent to the decision cited by SurgiQuest, this Court made clear that upon a finding of literal falsity, the Court may presume all other elements of a 43(a) claim. Like the plaintiff in Schering-Plough, Lexion is also seeking an injunction and the jury should not be confused by conflating damages with this instruction. Further, as discussed in other instructions, there can be situations where literal falsity can be sufficient to award damages without extrinsic evidence of confusion. To that end, Lexion refers the court to its instruction on damages.

[39] Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 943 (3d Cir. 1993)

[40] Castrol, Inc. v. Pennzoil Co., 987 F.2d 939, 943 (3d Cir. 1993)

[41] *Schering-Plough Healthcare Products, Inc. v. Neutrogena Corp.*, Civ. No. 09-642-SLR, 2010 WL 2788240 (D. Del. July 15, 2010),

[42] *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 590 (3rd Cir. 2002)

[43] *Schering-Plough Healthcare Products, Inc. v. Neutrogena Corp.*, Civ. No. 09-642-SLR, 2010 WL 2788240 (D. Del. July 15, 2010); *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3rd Cir. 1993),

be considered in determining whether it was misled by an advertisement for such a product.[44]

You should take into account the sophistication of the relevant purchaser in determining whether

an advertising statement is impliedly false or misleading to the target audience.[45]][46]

### [Disclaimers or Remote Disclosures

If an advertisement or product literature contains a footnote, disclaimer or

disclosure that purports to change the apparent meaning of a claim or render it literally truthful,

but that is so inconspicuously located, or in such fine print that readers tend to overlook it, it will

not remedy the false or misleading nature of the claim.[47]][48]

---

[44] *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 229 (3d Cir. 1990); *Plough, Inc. v. Johnson & Johnson Baby Prod. Co.*, 532 F. Supp. 714, 717 (D. Del. 1982) ("Context can often be important in discerning the message conveyed and this is particularly true where, as here, the target of the advertising is not the consuming public but a more well informed and sophisticated audience of merchants.").

[45] *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 476 (D.N.J. 2009) ("Doctors are sophisticated, knowledgeable consumers who are not easily misled; in contrast to literal falsity claims, in implied falsity claims, this factor must be taken into account for the Court's analysis of whether the message was impliedly false or misleading to the target audience. Likewise, committee members responsible for purchasing decisions who have knowledge of, and experience with, the advertised products are not likely to be deceived.").

[46] **LEXION OBJECTION:** Lexion objects to the inclusion of this instruction which amounts more along the lines of argument, particularly since even sophisticated consumers can be confused by false statement. See Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F.Supp.2d 384, 384 (D. N.J. 2009) ("[W]hen determining weher a claim is literally false, audience sophistication is irrelevant"), citing in part, Morgenstern Chem. Co. v. G.D. Searle & Co., 253 F.2d 390, 393-94 (3d Cir. 1958) (declining to take into account customer sophistication in particular industry when determining wether there is a likelihood of confusion) 4 McCarthy on Trademarks and Unfair Competition § 23:103 (4th ed.) ("Even if the relevant buyer class is composed of sophisticated experts in the field, this does not necessarily mean that even "experts" cannot be confused by similar marks, for "Human memories, even of discriminating purchasers, technicians, etc., are not infallible." (citations removed)) This is not helpful to the jury in analyzing the evidence, and makes the instruction even longer than they need to be, rendering them more complicated than they need to be.

[47] *Am. Home Prods. Corp. v. Johnson & Johnson*, 654 F. Supp. 568, 590 (S.D.N.Y. 1987) ("This determination is based upon the overall impression created by the advertisement. If the advertisement contains a definition or disclaimer which purports to change the apparent meaning of the claims and render them literally truthful, but which is so inconspicuously located or in such fine print that readers tend to overlook it, it will not remedy the misleading nature of the claims. *Giant Foods, Inc. v. FTC*, 322 F.2d 977, 986 (D.C.Cir.1963), *cert. dismissed*, 376 U.S. 967, 84 S. Ct. 1121, 12 L. Ed. 2d 1121 (1964)"); *Smithkline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck*, 906 F. Supp. 178, 185-86 (S.D.N.Y. 1995) (*quoting Am. Home Prods. Corp. v. Johnson & Johnson*, 654 F. Supp. 568, 590 (S.D.N.Y. 1987)); *TrafficSchool.com Inc. v. Edriver, Inc.*, 633 F. Supp. 2d 1063, 1076 (C.D. Cal. 2008); *Weight Watchers Int'l, Inc. v.Stouffer Corp.*, 744 F. Supp. 1259 (S.D.N.Y. 1990) ("Because of its location and size, the disclaimer does not effectively eliminate the misleading impression conveyed in the ad's large headline."); *Holmes Group, Inc. v. RPS Products, Inc.*, 424 F. Supp. 271, 293 (D. Mass. 2006) ("Potentially confusing statements may not be effectively disclaimed for purposes of trademark infringement claim where the disclaimer is not in sufficiently close proximity to the statements."); *Toho Co., Ltd. v. William Morrow & Co.*, Inc.,

33 F. Supp. 2d 1206, 1212 (C.D. Cal. 1998) (Court found "unauthorized" gave a limited amount of information and did not negate sponsorship. "That this [disclaimer] is conveyed on the back cover does not suffice. This Court is of the belief that most consumers look primarily at the front cover of a book prior to purchase.")

[48] **SurgiQuest Objection**: SurgiQuest objects to this portion of the instruction as irrelevant and inapplicable to the facts or evidence. None of the parties' challenged advertising statements contain a footnote or disclaimer that purports to change the apparent meaning of such statements. Unlike the consumer products and over-the-counter drug cases on which Lexion relies, SurgiQuest's Instructions for Use, which disclose to customers the possibility of air entrainment under certain conditions, are not advertising or promotional materials. *See Interlink Prod. Int'l, Inc. v. F & W Trading LLC,* 2016 WL 1260713, at *4 (D.N.J. Mar. 31, 2016) (dismissing false advertising claim based on product instructions reasoning that product instructions do not constitute advertising or promotion for Lanham Act purposes); *see also Marcyan v. Nissen Corp.,* 578 F. Supp. 485, *507 (N.D. Ind. 1982), aff'd sub nom.* 725 F.2d 687 (7th Cir. 1983) (finding that product "manual is not advertising material, nor is it distributed to the general public for the purpose of promoting…products: it is a user's manual and is provided to a purchaser of the defendants' equipment together with the equipment in order to describe its proper use.").  No statements about air entrainment from the AirSeal IFU are contained in any product advertisements and do not purport to qualify, correct or modify any of the challenged advertising statements. *Contra Am. Home Prods. Corp. v. Johnson & Johnson,* 654 F. Supp. 568, 590 (S.D.N.Y. 1987) ("If the *advertisement contains* a definition or disclaimer which *purports to change the apparent meaning of the claims* and render them literally truthful, but which is so inconspicuously located or in such fine print that readers tend to overlook it, it will not remedy the misleading nature of the claims.") Moreover, the AirSeal Instructions for Use are prepared, submitted and approved, and distributed to purchasers in accordance with mandatory Food and Drug Administration regulations.  *See* 21 CFR 807.87(e) (requiring directions for use to be included with medical device premarket notification submissions).

### 14.    ELEMENT TWO – DECEPTION OR A TENDENCY TO DECIEVE

If a party does not prove an advertising claim to be literally false, it must prove that it is deceptive or misleading.[49]   Whether an advertising statement is deceptive or misleading "depends on the message that is conveyed to consumers."[50]   For you to find that a statement is true but misleading, the party in the position of the plaintiff must show that the statement actually deceived or had the tendency to deceive a substantial segment of the audience.[51]   Put differently, if a challenged advertising statement is not literally false, a party cannot obtain relief under the Lanham Act by arguing how consumers could react; it must show how consumers actually do react.[52]

Public reaction is the measure of a commercial's impact.[53]   [Whether a challenged advertising statement is deceptive usually turns on the persuasiveness of a consumer survey.[54] You must determine whether the purchasing public was, in fact, mislead.[55]][56]   During trial, you

---

[49] *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994)

[50] *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994)

[51] *Highmark Inc. v. UPMC Health Plan Inc.,* 270 F.3d 160 (3d. Cir. 2001); Synthes, Inc. v. Emerge Medical, Inc., 25 F. Supp. 3d 617, 716 (E.D. Pa. 2014) ("a Lanham Act violation may still be established by proving that the commercial makes a false or misleading claim and that a substantial portion of consumers actually understand the ad to be making that claim")

[52] Sandoz Pharm. Corp. v. Richardson-Vicks, Inc., 902 F.2d 222, 228–29 (3d Cir. 1990).

[53] *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994)

[54] *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129-130 (3d Cir. 1994); *see Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,* 290 F.3d 578, 588 (3d Cir. 2002) ("When a Court considers whether a product's name and advertising are misleading, it may examine consumer survey evidence demonstrating that they 'play upon' or 'reinforce' consumer perceptions, or otherwise 'suggest' false messages…. Novartis should have been required to prove through a consumer survey that the name and advertising actually misled or had a tendency to mislead consumers into believing that the product provided nighttime heartburn relief superior to any other product in the market."); *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011) ("If the message conveyed by an advertisement is literally true or ambiguous, however, the plaintiff must prove actual deception or a tendency to deceive, and it may do so with a properly conducted consumer survey.")

[55] *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 130 (3d Cir. 1994)

[56] **OBJECTION LEXION:** Lexion objects to this instruction because it will confuse the jury as there is no consumer survey on actual confusion in the case.  In addition, it incorrectly suggests that a survey is necessary to

heard the live testimony of Ms. Bridget Moriarty and deposition testimony of other sales representatives regarding conversations with individual customers.  You may only consider this this testimony for a limited purpose.  You can only consider this testimony if the witness testified to a customer's specific statement regarding the AirSeal product. [However, you cannot consider the testimony of Ms. Moriarty or another sales representative as proof of whether or not a customer at some point in the past claimed to be confused about how the AirSeal functions.[57]][58]

[Evidence of actual confusion is difficult to find as many instances are unreported. The rarity of such evidence makes even a few incidents probative of the likelihood of confusion.[59]][60]

---

show confusion when that is not the law, particularly here where evidence of actual confusion through testimony and other means has been presented by Lexion. See e.g., PPX Enters. v. Audiofidelity Enters., Inc., 818 F.2d 266, 271 (2d Cir. 1987) ("Actual consumer confusion often is demonstrated through the use of direct evidence, e.g., testimony from members of the buying public....".

[57] See Trial Tr. (Apr. 4, 2017) (Day 2) at 498:1-499:15.

[58] LEXION OBJECTION: Lexion objects that the bracketed language does not reflect the spirit of the Court's instruction concerning the confusion evidence and its should be struck.  The Court made clear that while Ms. Moriarity would not be permitted to testify about customers' statements proclaiming confusion when that confusion occurred, but could testify about what a customer told her, that is, "she could say [a] customer told me that AirSeal did not pull operating room air into the abdomen."  See Trial Tr. (Apr. 4, 2017) (Day 2) at 498:1-499:15.

[59] Kos Pharmaceuticals v. Andrx Corp., 369 F.3d 700, 719-20 (3d. Cir. 2004)  see also Country Floors, Inc. v. Partnership of Gepner & Ford, 930 F.2d 1056, 1064 (3d Cir.1991) (quoting cases holding that "very little proof of actual confusion would be necessary to prove likelihood of confusion") (emphasis added).

[60] **SurgiQuest Objection**: SurgiQuest objects to this portion of the instruction as a misstatement of the law with regard to the "deception" element of a Lanham Act false advertising claim. To satisfy this element, a Lanham Act plaintiff must prove that a challenged advertising statement actual deceives or has a tendency to deceive "a substantial portion of the intended audience." Groupe SEB USA, Inc. v. Euro-Pro Operating LLC, 774 F.3d 192, 198 (3rd Cir. 2014) (emphasis added).  A Lanham Act false advertising plaintiff cannot satisfy this burden by showing "a few incidents" of confusion.  See, e.g., Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc., 19 F.3d 125, 133–34 (3d Cir. 1994) ("[expert's] assessment of the Minty Tablets survey, the survey Johnson–Merck contends comprises its key evidence, was that only 7.5% of the responses linked strength to superior relief  in response to open-ended questions. This is an insufficient number to show that, under the Lanham Act, the advertising tends to deceive or mislead 'a substantial portion of the intended audience.'"); Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1021–22 (3d Cir. 2008) ("In an action brought under sections 32 and 43(a) of the Lanham Act for trademark infringement, …plaintiff need not provide proof of actual confusion; he need only show likelihood of confusion. In an action brought under another part of section 43(a) of the Lanham Act for false advertising, … if [its] claim is not that the advertising was false but that it was misleading, [it] must prove the public was actually misled or confused by it.") (emphasis added).  Indeed, "[w]ith regard to what constitutes a substantial or significant number of consumers who are misled, … several cases … suggest that 20% would be sufficient."  19 F.3d 125at 134, n. 14.  Lexion's cited cases relate to Lanham Act trademark infringement claims, where "actual confusion" is but one, non-dispositive factor in a multi-factor (Lapp) likelihood of confusion analysis. Am. Beverage Corp. v. Diageo N. Am., Inc., 936 F. Supp. 2d 555, 607 (W.D. Pa. 2013) ("Evidence of actual

[Confusion, mistake or deception of any kind in the minds of persons in a position to influence a purchasing decision or persons whose confusion presents a significant risk to the sales, goodwill or reputation of the plaintiff may be considered.[61] Confusion by those selling a product may be enough to establish a tendency deceive because if those selling a product are confused, that is evidence that the consumers that the sales persons interact with will also be confused.[62]  Publications including statements reaching an erroneous conclusion concerning the nature of advertised products may also demonstrate confusion.[63]][64]

_____

confusion is not necessary to prove trade dress infringement under the Lanham Act.")  Even in the trademark infringement "actual confusion" context, courts have "noted that 'there is a difference between isolated expressions of momentary confusion and confusion that leads to actual purchasing decisions.'" *Id.* at 608 (quoting *Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.*, 964 F. Supp. 733, 746 (S.D.N.Y. 1997).  Lexion offers no authority to suggest that evidence of a "few incidents" of consumer confusion are considered probative of whether a substantial portion of the intended audience is actually or likely to be deceived for a Lanham Act false advertising claim.

[61] *Arrowpoint Capital Corp. v. Arrowpoint Asset Management, LLC,* 793 F.3d 313, 323 (3d. Cir. 2015) ("The Lanham Act protects against the "likelihood of confusion, mistake or deception of any kind, not merely of purchasers."  "It certainly covered confusion created in the minds of persons in a position to influence a purchasing decision or persons whose confusion presents a significant risk to the sales, goodwill, or reputation of the trademark owner.").

[62] *Telechron, Inc. v. Telicon Corp.*, 97 F. Supp. 131, 143 (D. Del. 1951) (The Court determined that "Confusion among clerks is itself enough to establish infringement because it is certain that if clerks who sell a product are confused to point of selling one article for another such is evidence of the probability of confusion by customers.");  Union Carbide Corp. v. Ever-Ready Incorporated, 531 F.2d 366 (7th Cir. 1976);  Rann Pharmacy, Inc. v. Shree Navdurga LLC, 2016 WL 6876350 (E.D. Pa. Nov. 22, 2016) Interstate Battery System of America, Inc. v. Wright, 811 F.Supp. 237, 243 (N.D. Tex. 1993); Dynamic Aviation Group, Inc. v. Dynamic International Airways, LLC, 2016 WL 1247220 (W.D. Vir. March 24, 2016).  ;

[63] *Cuisinarts, Inc. v. Robot-Coupe Int'l Corp.*, 509 F. Supp. 1036, 1044 (S.D.N.Y. 1981) (proof of actual confusion furnished by newspaper articles reaching erroneous conclusion; "That a trio of independent journalists (two of them food writing specialists) reached the same erroneous conclusion concerning the nature of the food processors now being sold, and Cuisinarts' status in the industry, is eloquent testimony to the misleading propensity of certain aspects of RC-I's campaign.").

[64] **SURGIQUEST OBJECTION**: SurgiQuest objects to this portion of the instruction that suggests evidence of "non-purchaser confusion" is probative of whether a challenged advertising statement actually deceives or has a tendency to deceive "a substantial portion of the intended audience." *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3rd Cir. 2014) (emphasis added).  The "deception" element of a Lanham Act false advertising claim turns on evidence of *consumer reaction. See Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.,* 902 F.2d 222, 228–29 (3d Cir. 1990) ("Consequently, where the advertisements are not literally false…plaintiff bears the burden of proving actual deception by a preponderance of the evidence.  Hence, it cannot obtain relief by arguing how consumers *could react*; it must show how consumers *actually do* react.") (emphasis in original); *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm.,* Inc., 19 F.3d 125, 129–30 (3d Cir. 1994) ("If a plaintiff does not prove the claim to be literally false, [it] must prove that it is deceptive or misleading, which depends on the message that is conveyed to consumers.  *Public reaction* is the measure of a commercial's impact….[T]he success of the claim usually turns on the persuasiveness of a *consumer survey*.  The factfinder must determine whether *the public* was, in fact, misled.") (emphasis added); *Synthes, Inc. v. Emerge Medical, Inc.*, 25 F.

[If a party demonstrates that the defendant has intentionally set out to deceive the public and its conduct in this regard is of an egregious nature, a presumption arises that consumers are in fact being deceived. [65]][66]

---

Supp. 3d 617, 716 (E.D. Pa. 2014) ("Where the [plaintiff] is unable to demonstrate that the complained-of statement is literally false, a Lanham Act violation may still be established by proving that the commercial makes a false or misleading claim and that a substantial portion of *consumers actually understand* the ad to be making that claim") (emphasis added); *Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*, 292 F. Supp. 2d 594, 599 (D.N.J. 2003) ("The plaintiff must therefore produce evidence that *consumers are actually misled* by the defendant's statements; speculation as to how consumers could react is insufficient") (emphasis added).  Lexion cites no authority holding that evidence of "non-purchaser confusion" can be used to prove substantial consumer reaction for a Lanham Act false advertising claim.  Lexion's citation to *Arrowpoint Capital Corp. v. Arrowpoint Asset Management, LLC*, 793 F.3d 313, 323 (3d. Cir. 2015) is misplaced.  *Arrowpoint Capital* discusses considering "non-purchaser deception" as evidence of "actual confusion" in the trademark infringement context.  Different standards apply to likelihood of consumer confusion (for trademark infringement) and deception among a substantial portion of consumers (for false advertising).  *See Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1021–22 (3d Cir. 2008) ("We reject the NFL's arguments about the proper legal standard… For claims brought under subsection [§ 43(a)(1)(A), only a likelihood of confusion is required. The distinction between impliedly false and expressly false statements that the NFL urges us to apply comes from the jurisprudence under subsection [§ 43](a)(1)(B). We decline the NFL's invitation to muddle the two separate bodies of law that have developed under the separate subsections of § 43(a)."); *see also Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 252–53 (3d Cir. 2011) ("[W]e are not dealing with those words in isolation. This is not a trademark case….We are obligated in this false advertising case under § 43(a)(1)(B) to look at the words 'Havana Club' in the context of the entire accused advertisement...."). Evidence of "actual confusion" is but one factor in the Third Circuit's (*Lapp*) ten-factor likelihood-of-confusion balancing test and is *not required* to prove trademark infringement.  *See Am. Beverage Corp. v. Diageo N. Am., Inc.*, 936 F. Supp. 2d 555, 607 (W.D. Pa. 2013) ("Evidence of actual confusion is not necessary to prove trade dress infringement under the Lanham Act.")  For Lanham Act false advertising, absent a showing of literal falsity, proof that an advertising statement is deceptive or misleading to a substantial portion of the intended audience is a *required element*.; Moreover, the rationale for considering instances of "salesperson confusion" as evidence of "actual confusion" for trademark infringement purposes is inapplicable here.  Trademark courts have reasoned that a salesperson is generally more knowledgeable than purchasers about average consumer products, and thus evidence of "salesperson confusion" may tend to show a likelihood of consumer confusion.  In contrast, the products at issue are medical devices marketed to a highly specialized and sophisticated category of consumers (*i.e.*, surgeons and hospitals). *See Plough, Inc. v. Johnson & Johnson Baby Prod. Co.*, 532 F. Supp. 714, 717 (D. Del. 1982) ("Context can often be important in discerning the message conveyed and this is particularly true where, as here, the target of the advertising is not the consuming public but a more well informed and sophisticated audience of merchants."); *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 476 (D.N.J. 2009) ("Doctors are sophisticated, knowledgeable consumers who are not easily misled; in contrast to literal falsity claims, in implied falsity claims, this factor must be taken into account for the Court's analysis of whether the message was impliedly false or misleading to the target audience.  Likewise, committee members responsible for purchasing decisions who have knowledge of, and experience with, the advertised products are not likely to be deceived."). There is no factual or evidentiary basis to support an instruction that equates confusion among a few sales representatives with substantial deception among purchasers in the relevant medical device industry.

[65]  Bracco Diagnostics, Ic. v. Amersham Health, Inc. 627 F. Supp. 2d 384 (2009) (noting that intentinal or willful deception will justify a rebuttable presumption of confsion.); McCarthy § 30:63 and 27:42 (stating that "[W]here confusion of customers was intended b defendant, actual confusion will be presumed to have occurred, and the burden is on defendant to prove otherwise.) *Am. Home Prod. Corp. v. Procter & Gamble Co.*, 871 F. Supp. 739 (D.N.J. 1994) ("However, even if I were to find hat plaintiff's evidence establishes defendants' intent to mislead, under recent Third Circuit precedent this finding is insufficientto warrant the grant of injunctive relief. I must also

determine that the defendants' conduct rose to "egregious proportions."); *Johnson & Johnson\*Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294 (2d Cir. 1992).

[66] **SurgiQuest Objection:** SurgiQuest disputes this instruction as an inaccurate statement of Third Circuit law.  The Third Circuit has not adopted any presumption of consumer deception upon a showing of intentional conduct of an egregious nature. *See Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 132 (3d Cir. 1994) ("we need not decide whether to adopt the [Second Circuit's] *Smithkline Beecham* presumption in case of clear and egregious conduct.")

### 15.     ELEMENT THREE – MATERIALITY

"The plaintiff must also show that defendant's misrepresentation is 'material,' in that it is likely to influence the purchasing decision."[67] Materiality focuses on whether the false or misleading statement is likely to make a difference to purchasers.[68] Survey evidence may be used to show whether or not a false or misleading claim or statement is material.[69]

If a defendant's advertising statement is determined to be false, it is presumed to be material.[70] However, the defendant may rebut this presumption of materiality by providing sufficient evidence to show, by a preponderance of the evidence, that the false statement is immaterial to purchasing decisions.[71]

If a defendant's advertising statement is true but misleading, then the plaintiff must prove that the deceptive statement is material in that it is likely to influence purchasing decisions.[72]

[Whether a claim or statement is material can be shown by demonstrating that the statement concerns an inherent quality or characteristic of the product,[73]][74] [or because they involved health, safety, or other areas where reasonable consumers would be concerned.[75]][76]

---

[67] *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia,* 898 F.2d 914, 922 (3d Cir. 1990)

[68] Labware, Inc. v. Thermo Labsystems, Inc., No. CIV.A.04-2545, 2005 WL 1541028, at *11 (E.D.Pa. June 29, 2005);

[69] Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 173 (3d Cir. 2001).

[70] Schering-Plough Healthcare Products, Inc. v. Neutrogena Corp., Civ. No. 09-642-SLR, 2010 WL 2788240340226 (D. Del. June 7, 2010)("[O]nce plaintiff proves literal falsity of an advertisement, the court may presume all other elements of the §43(a) claim"); Schering-Plough Healthcare Products, Inc. v. Neutrogena Corp., Civ. No. 09-642-SLR, 2010 WL 2340226 (D. Del. June 7, 2010) (rejecting defendant's argument that even amidst a finding of explicit literal falsity, plaintiff must also demonstrate materiality, actual deception or a tendency to deceive and a likelihood of injury." (citation omitted); Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co., 290 F.3d 578, 586 (3rd Cir. 2002) ("If a plaintiff proves that the challenged commercial claims are 'literally false," a counrt may grant relief without considering whether the buying public was actually misled." (citation comitted); *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 478 (D.N.J. 2009).

[71] *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 478 (D.N.J. 2009); see Labware, Inc. v. Thermo Labsystems, Inc., No. CIV.A.04-2545, 2005 WL 1541028, at *11-12 (E.D. Pa. June 29, 2005) (no Lanham Act violation for literally false statement based in part on lack of materiality).

[72] *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,* 290 F.3d 578 (3rd Cir. 2002)

[73] Cashmere & Camel Hair Mfrs. Institute v. Saks Fifth Ave., 284 F.3d 302, 311-12 (1st Cir. 2002); see Schering-Plough Healthcare Products, Inc. v. Neutrogena Corp., Civ. No. 09-642-SLR, 2010 WL 2340226 (D. Del. June 7, 2010), citing to Cashmere ("Common sense and practical experience tell us that we can presume, without reservation, that consumers have been deceived when a defendant has explicitly misrepresented a fact that relates to an inherent quality or characteristic of the article sold.  To presume as much requires neither a leap of faith nor the creation of any new legal principle.")

[74] **SurgiQuest Objection**: SurgiQuest objects to this portion of the instruction as an inaccurate statement of the law and as irrelevant and inapplicable to the facts.  With regard to proving materiality, the Third Circuit has recognized, "[c]onsumer survey evidence is extremely helpful in determining whether an allegedly false statement is material." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001) (quoting Castrol, 987 F.2d at 954 (Roth, J., dissenting)).  But, the Third Circuit has never held or acknowledged that materiality can be shown by demonstrating that an advertising "statement concerns an inherent quality or characteristic of the product."  Moreover, Lexion's proposed instruction does not accurately characterize the materiality discussion from its cited cases.  The relevant quote from *Cashmere & Camel Hair Mfrs. Institute v. Saks Fifth Ave.*, 284 F.3d 302 (1st Cir. 2002), for example, cited by Judge Robinson in *Schering-Plough Healthcare Prod., Inc. v. Neutrogena Corp.*, 2010 WL 2340226, at *3 (D. Del. June 7, 2010), deals with the *presumption* of materiality "when a defendant has *explicitly misrepresented a fact* that relates to an inherent quality or characteristic of the article sold." *Id.* at 315.  Lexion's proposal improperly suggests that materiality may be shown with respect to any statement that "concerns" an inherent quality or characteristic of a product, regardless of whether defendant makes an explicit misrepresentation of fact.  In *Cashmere*, the defendant explicitly misrepresented a clothing item's cashmere contents.  In that context, the First Circuit held that defendant's misrepresentation was "material because it relates to a characteristic that *defines* the product at issue, as well as the market in which it is sold." 284 F.3d at 312.  Lexion has not shown which challenged advertising statement explicitly misrepresented a fact that relates to an inherent quality or characteristic of the AirSeal product, and has not shown the relevant inherent quality or characteristic that it claims to define the AirSeal product.

[75] Kraft Inc. v. ITC, 970 F.2d 311, 322 (7th Cir. 1992); Performance Industries, Inc. v. Koos, Inc. 1990 WL 161253 (E.D. Pa. Oct. 17, 1990) ("The totality of the representations regarding the safety, effectiveness, environmental hazard, and the cost of the two products are certainly "material" in sum, if not individually, and are likely to influence purchasing decision." (injunctive relief granted on false advertising claim))

[76] **SurgiQuest Objection**: SurgiQuest objects to this portion of the instruction as an inaccurate statement of the law and as irrelevant and inapplicable to the facts.  The Third Circuit has never held or acknowledged that materiality can be shown by demonstrating that an advertising statement "involved health, safety, or other areas where reasonable consumers would be concerned."  Unlike here, Lexion's cited case,  *Performance Industries, Inc. v. Koos, Inc.* 1990 WL 161253 (E.D. Pa. Oct. 17, 1990), involved explicit representations regarding the "safety, effectiveness [and] environmental hazard" regarding the products at issue. *Id.* at *1 (representing "Safe-T-Shaw" product as "environmentally safe" and "safe to handle.").   None of the challenged advertising statements are directed to AirSeal's safety features or characteristics, Moreover, Lexion's cited case, *Kraft Inc. v. ITC*, 970 F.2d 311 (7th Cir. 1992), does not support inclusion of this proposed instruction.  First, *Kraft* is a Federal Trade Commission Act case, and not a Lanham Act false advertising case.  970 F.2d at 320 (noting that "Kraft's reliance on Lanham Act decisions is misplaced..") (citations omitted).  Second, *Kraft* does not hold that any advertising statement which involved health or safety can be shown material.  *Kraft* involved a processed cheese advertiser's claim of equivalency to milk in terms of calcium content.  In that context, the Seventh Circuit upheld the FTC's finding that the advertiser's statements were misleading, reasoning that "the *average consumer* is not likely to know that much of the calcium in five ounces of milk (30%) is lost in processing, which leaves consumers with a misleading impression about calcium content."  *Id.* at 322 (emphasis added).  Lexion offers no facts to support that the relevant consumers of AirSeal (*i.e.*, surgeons and hospitals) would be misled about AirSeal's safety functions. *See Plough, Inc. v. Johnson & Johnson Baby Prod. Co.*, 532 F. Supp. 714, 717 (D. Del. 1982) ("Context can often be important in discerning the message conveyed and this is particularly true where, as here, the target of the advertising is not the consuming public but a more well informed and sophisticated audience of merchants."); *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 476 (D.N.J. 2009) ("Doctors are sophisticated, knowledgeable consumers who are not easily misled; in contrast to literal falsity claims, in implied falsity claims, this factor must be taken into account for the Court's analysis of whether the message was impliedly

false or misleading to the target audience.  Likewise, committee members responsible for purchasing decisions who have knowledge of, and experience with, the advertised products are not likely to be deceived.").

### 16.   ELEMENT FOUR – TRAVEL IN INTERSTATE COMMERCE

Fourth, a party in the position of plaintiff must prove that the advertised products traveled in interstate commerce.[77]   This element is met if the defendant's products traveled across state lines.   Here, the parties have agreed that SurgiQuest's product and Lexion's products travelled in interstate commerce.   Accordingly, neither party needs to provide this element,

---

[77] *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,* 290 F.3d 578 (3rd Cir. 2002)

### 17.    ELEMENT FIVE – INJURY OR LIKELIHOOD OF INJURY

Fifth, a plaintiff must prove that it has been injured or is likely to be injured in terms of declining sales, loss of good will, etc.[78] To do this, a party asserting a claim of false advertising must prove by a preponderance of the evidence that an allegedly false or misleading statement is likely to cause harm to it.[79]   A party's mere subjective belief that it is likely to be injured is insufficient to satisfy this element.   Rather, the party asserting false advertising must demonstrate in some manner a causal link between the allegedly false or misleading statements and a likelihood of harm.[80]

[A plaintiff needs to establish that it is likely to be injured by a false or misleading statement made by the defendant.  A party does not need to prove that it was actually injured.[81] A party may meet its burden and by demonstrating a reasonable basis for its belief that it will be damaged, and that a causal nexus between the injury and the false advertisement exists.[82]  That is to say that the harm alleged has a sufficiently close connection to the conduct the statute prohibits.[83]][84]

---

[78] *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,* 290 F.3d 578 (3rd Cir. 2002)

[79] Rexall Sundown, Inc. v. Perrigo Company, Case 2:07-cv-03397-JFB-ARL, Jury Charge, Document 258 at 37-38 (E.D.N.Y. April 5, 2010)

[80] *Rexall Sundown, Inc. v. Perrigo Company,* Case 2:07-cv-03397-JFB-ARL, Jury Charge, Document 258 at 37-38 (E.D.N.Y. April 5, 2010)

[81] *Warner-Lambert Co. v. Breathasure, Inc.,* 204 F.3d 87, 93 (3d. Cir. 2000).

[82] *Warner-Lambert Co. v. Breathasure, Inc.,* 204 F.3d 87, 93 (3d. Cir. 2000).

[83] Lexmark International, Inc. v. Static Components, Inc., 134 S.Ct. 1377, 1390 (2014)

[84] **SurgiQuest Objection**: SurgiQuest objects to this portion of the instruction suggesting that Lexion can meet its burden to satisfy the "injury" prong, including for its monetary damage claim, by demonstrating a likelihood of injury or reasonable belief that it will be injured.  Under Third Circuit law, a Lanham Act false advertising plaintiff seeking monetary damages must prove actual consumer deception and actual injury.  Because this requirement implicates the burden of proof to satisfy the substantive "injury" element of the claim, it is proper to instruct the jury regarding that requirement in the relevant "injury" element section, as opposed to just the separate damages section. It would be confusing to instruct the jury that it need not find "actual injury" to establish liability for all purposes, only to then correct or qualify that instruction later in the context of monetary damages the Court's instruction on monetarily (i.e., the *only* type of relief that the jury decides). SurgiQuest incorporates by reference its **Objection to Instruction 13,** *supra*, and the relevant authority cited therein, *e.g.*, *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 649 (3d Cir. 1958); *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 92 (3d Cir. 2000);

[However, a plaintiff seeking monetary rather than injunctive relief must show actual consumer reliance and actual injury.[85]   A plaintiff seeking monetary damages therefore must show more than a mere presumption of actual customer confusion based on a finding that a statement is literally false.[86]   A plaintiff seeking monetary damages must link the deception with actual harm to its business.   Actual injury cannot exist without a nexus between a false advertisement and a purchasing decision that adversely impacts the plaintiff.[87]][88]   That is to say that the harm alleged has a sufficiently close connection to the conduct the statute prohibits.[89] A plaintiff can establish a causal connection with a challenged advertising statement by showing a direct diversion of

---

*Schering-Plough Healthcare Prods., Inc. v. Neutrogena Corp.*, 2010 WL 2788240, at *3 (D. Del. Jul. 15, 2010); *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 481 (D.N.J. 2009); *Labware, Inc. v. Thermo Labsystems, Inc.*, 2005 WL 1541028, at *12 (E.D. Pa. June 29, 2005).

[85] *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 649 (3d Cir. 1958) ("In cases of injunction, however, there seems to be no requirement that purchasers actually be deceived, but only that the false advertisements have a tendency to deceive….While it would be going too far to read the requirement of customer reliance out of this section so far as damages are concerned, we believe that this is a recognition that, as with most equitable relief by way of injunction, Section 43(a) may be asserted upon a showing of likelihood of damage without awaiting the actuality."); *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 92 (3d Cir. 2000) ("a plaintiff seeking damages under § 43(a) must establish customer reliance"); *Labware, Inc. v. Thermo Labsystems, Inc.*, 2005 WL 1541028, at *12 (E.D. Pa. June 29, 2005) ("Typically, the final element of a Lanham Act claim requires proof of 'a likelihood of injury to the plaintiff in terms of declining sales, [or] loss of good will.' But where, as here, a plaintiff seeks monetary rather than injunctive relief, the plaintiff must show "actual damages rather than a mere tendency to be damaged.")

[86] *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 481 (D.N.J. 2009) ("a plaintiff seeking monetary damages must show more than a mere presumption of actual customer confusion based on a finding of literal falsity").

[87] *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 481 (D.N.J. 2009) ("The plaintiff must link the deception with actual harm to its business. 'Actual damages cannot exist without a nexus between a false advertisement and an adverse purchasing decision.'") (quoting *Labware, Inc. v. Thermo Labsystems, Inc.*, 2005 WL 1541028, at *12 (E.D. Pa. June 29, 2005).

[88] **LEXION OBJECTION**: Lexion objects to this aspect of the instruction in that it inserts damages into the elements for establishing liability which will be confusing to the jury. Actual injury is not required to establish liability and injury may be presumed.  Further, injury may also be presumed where there is literally false advertising between competitors like in the case before the court]

[89] Lexmark International, Inc. v. Static Components, Inc., 134 S.Ct. 1377, 1390 (2014)

sales or the lessening of goodwill associated with the plaintiff's products.[90]  The causal connection may be established through either direct or circumstantial evidence.[91]

When one party's challenged advertisement references the other party's product by name, and the party asserting a false advertising claim can establish that the comparison statements are both deceptive to consumers and material, it is presumed that party has been injured by these statements.[92]

When one party's challenged advertisement does not explicitly reference the other party's product by name, a presumption of injury may still arise if you find, by a preponderance of the evidence, that given the nature of the market, it would be obvious to consumers that the advertisement is targeted at the products of the party asserting a false advertising claim, even though that party's products are not identified by name.[93]

---

[90] Rexall Sundown, Inc. v. Perrigo Company, Case 2:07-cv-03397-JFB-ARL, Jury Charge, Document 258 at 37-38 (E.D.N.Y. April 5, 2010)

[91] *Bracco Diagnostics, Inc. v. Amersham Health, Inc*., 627 F. Supp. 2d 384, 487 (D.N.J. 2009) ("Diversion of sales can be proven either through direct or circumstantial evidence"); Efco Corp. v. Symons Corp., 219 F.3d 734, 740 (8th Cir. 2000) (finding causation from circumstantial evidence of damage where sales were decreasing while Plaintiff's sales were increasing.)

[92] *Rexall Sundown, Inc. v. Perrigo Company*, Case 2:07-cv-03397-JFB-ARL, Jury Charge, Document 258 at 37-38 (E.D.N.Y. April 5, 2010)

[93] *Rexall Sundown, Inc. v. Perrigo Company*, Case 2:07-cv-03397-JFB-ARL, Jury Charge, Document 258 at 37-38 (E.D.N.Y. April 5, 2010)

## 18.     DECEPTIVE TRADE PRACTICES

Each party contends that the other has engaged in deceptive trade practices under the Delaware Uniform Deceptive Trade Practices Act.  To prove a violation of the Delaware Deceptive Trade Practices Act, the party asserting the claim must prove by a preponderance of the evidence that in the course of the other's business, it either:

(a) represents that its goods have characteristics, uses, or benefits that they do not have;

(b) disparages the goods, services or business of another by false or misleading representation of fact;

(c) advertises goods with an intent not to sell them as advertised; or

(d) engaged in other conduct which creates or likelihood of confusion or misunderstanding.[94]

In order to prevail in an action under this chapter, a complainant need not prove competition between the parties or actual confusion or misunderstanding.[95]   The Delaware Deceptive Trade Practices Act is directed at patterns of deceptive conduct, not isolated statements or isolated incidents of consumer fraud.[96]

---

[94] 6 Del. C. 2532(a).
[95] 6 Del. C. 2532(b).
[96] *Wald v. Wilmington Trust Co.*, 552 A.2d 853, 855 (Del.Super.1988); EDIX Media Grp., Inc. v. Mahani, No. CIV.A. 2186-N, 2006 WL 3742595, at *12 (Del. Ch. Dec. 12, 2006).

### 19.   UNFAIR COMPETITION UNDER DELAWARE LAW

### [Lexion Proposed][97] [98]

Each party also contends that the other has engaged in unfair competition under the common law of Delaware.  The plaintiff asserting this claim must prove by a preponderance of the evidence that the other has in connection with the marketing of goods made a representation regarding its own goods or those of the plaintiff that is likely to deceive or mislead prospective purchasers to the commercial detriment of complainant.[99]

A representation is to the likely commercial detriment of the plaintiff: (a) the representation is material, in that it is likely to affect the conduct of prospective purchasers; and (b) there is a reasonable basis for believing that the representation has caused or is likely to cause a diversion of trade from the plaintiff or harm to plaintiff's reputation or good will.[100]

---

[97] Delaware Courts have relied upon the Restatement (Third) of Unfair Competition in other cases and Lexion submits that Delaware would do so here if provided the opportunity.  Diamond State Tire, Inc. v. Diamond Town Tire Pros & Auto Care, LLC, No. CV 11550-VCS, 2016 WL 4384304, at *4 (Del. Ch. Aug. 15, 2016), judgment entered, (Del. Ch. Aug. 18, 2016); Del. Exp. Shuttle, Inc. v. Older, No. CIV.A. 19596, 2002 WL 31458243, at *18 (Del. Ch. Oct. 23, 2002); Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC, No. CIV.A. 3718-VCP, 2010 WL 338219, at *18 (Del. Ch. Jan. 29, 2010).

[98] **<u>SurgiQuest Objection</u>**: SurgiQuest objects to this instruction as an inaccurate statement of Delaware law. Drawing from Delaware state court cases, the Delaware district court in Deston Therapeutics LLC v. Trigen Labs., Inc., 723 F. Supp. 2d 665 (D. Del. 2010) expressly set forth the elements of a Delaware unfair competition claim in the false advertising context.  Id. at 676 ("[T]his district has recently adopted the definition of unfair competition from the Delaware Superior Court, which stated that the 'elements of the tort of unfair competition are that the plaintiff has a reasonable expectancy of entering a valid business relationship, with which the defendant wrongfully interferes, and thereby defeats the plaintiff's legitimate expectancy and causes him harm.'").  These elements are set forth in SurgiQuest's proposed instruction on Unfair Competition.  Neither Lexion nor SurgiQuest can identify a single Delaware case recognizing the Restatement's strand of unfair competition recited in Lexion's instruction.

[99] Restatement (Third) of Unfair Competition §§ 2 & 6; Diamond State Tire, Inc. v. Diamond Town Tire Pros & Auto Care, LLC, No. CV 1150-VCS, 2016 WL 4384304, at *4 (Del. Ch. Aug. 16, 2016), judgment entered, (Del. Ch. Aug. 18, 2016); Del. Exp. Shuttle, Inc. v. Older, No. CIV.A. 19596, 2002 WL 31458243, at *18 (Del. Ch. Oct. 23, 2002); Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC, No. CIV. A. 3718-VCP, 2010 WL 338219, at *18 (Del. Ch. Jan. 29, 2010).

[100] Restatement (Third) of Unfair Competition § 3.

## Unfair Competition under Delaware Law [SurgiQuest Proposed]

Each party also contends that the other has engaged in unfair competition under the common law of Delaware.  The party in the position of the plaintiff asserting this claim must prove by a preponderance of the evidence that:

1.      The plaintiff had a reasonable expectancy of entering a valid business relationship with its customers (in the form of product sales);

2.      The defendant has wrongfully interfered with that relationship; and

3.      The defendant's actions have defeated the plaintiff's legitimate expectancy of entering a valid business relationship.[101][102]

---

[101] Deston Therapeutics LLC v. Trigen Labs., Inc., 723 F. Supp. 2d 665, 676 (D. Del. 2010) ("[T]his district has recently adopted the definition of unfair competition from the Delaware Superior Court, which stated that the 'elements of the tort of unfair competition are that the plaintiff has a reasonable expectancy of entering a valid business relationship, with which the defendant wrongfully interferes, and thereby defeats the plaintiff's legitimate expectancy and causes him harm.'") (quoting Ethypharm S.A. v. Abbott Labs., 598 F. Supp. 2d 611, 618 (D. Del. 2009) and Total Care Physicians, P.A. v. O'Hara, 798 A.2d 1043, 1057 (Del. Super. Ct. 2001)).

[102] **OBJECTION**: Lexion objects to SurigiQuest's instruction.  While the *Deston* case cited by SurgiQuest is a false advertising case and accurately quoted, the *Deston* court relied upon the *Ethypharm* and *Total Care* cases which were tortious interferences cases, not false advertising cases.  As a result, the *Deston* court did not derive the elements of unfair competition from false advertising cases. This issue was discussed during the Pre-Trial Conference held on March 8, 2007 (see Trans. 92-94).

## 20.    DAMAGES – FALSE ADVERTISING UNDER FEDERAL LANHAM ACT AND COMMON LAW UNFAIR COMPETITION

### [Lexion Proposed][103]

---

[103] **SurgiQuest Objection**: SurgiQuest objects to Lexion's single, omnibus monetary damages instruction as complex and confusing for the jury.  Similar to patent infringement cases where the plaintiff asserts a monetary damage claim that raises multiple legal concepts, SurgiQuest's proposed damages instructions provide separate, discrete instructions on Lexion's lost profits and corrective advertising damages theories.  *See* Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware,§§ 6.1, 6.5-6.7, 6.10.  SurgiQuest objects to Lexion's instruction on "lost profit" damages as an inaccurate and incomplete statement of the law.  Lexion's instruction overlooks that a plaintiff seeking monetary damages must show actual confusion and actual damages rather than a mere tendency to be damaged under Third Circuit law. *See Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 649 (3d Cir. 1958) ("While it would be going too far to read the requirement of customer reliance out of this section so far as damages are concerned, we believe that this is a recognition that, as with most equitable relief by way of injunction, Section 43(a) may be asserted upon a showing of likelihood of damage without awaiting the actuality."); *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 92 (3d Cir. 2000) ("a plaintiff seeking damages under § 43(a) must establish customer reliance"); *Bracco Diagnostics, Inc. v. Amersham Health*, Inc., 627 F.Supp.2d 384 (2009) ("a plaintiff seeking monetary rather than injunctive relief must show "actual damages rather than a mere tendency to be damaged.").  SurgiQuest further objects to Lexion's "lost profits" damage instruction as overbroad and incomplete, because it fails to instruct the jury that Lexion bears the burden to prove a causal nexus between a challenged advertising statement and Lexion's lost sales. *Bracco*, 627 F. Supp. 2d at 486 ("In order to prove causation under...the Lanham Act, the aggrieved party must demonstrate that the false advertisement actually harmed its business.")  Moreover, SurgiQuest objects to Lexion's corrective advertising instruction as incomplete and legally inaccurate, insofar as it fails to distinguish between recovery of past versus future corrective advertising costs and suggests that Lexion may recover both monetary damages for lost sales and for future corrective advertising as a form of actual damage under the Lanham Act.  *See Calloway Golf. Co. v. Slazenger*, 384 F. Supp. 2d 735, 740-41 (D. Del. 2005).  Finally, SurgiQuest objects generally to the inclusion of a jury instruction on disgorgement of profits, because Lexion's theory of disgorgement based on unjust enrichment is an equitable remedy for the Court to decide. *Keurig, Inc. v. Sturm Foods, Inc.*, No. CIV. 10-841-SLR-MPT, 2013 WL 633574, at *1 (D. Del. Feb. 19, 2013) ("Disgorgement of defendant's profits, under a theory of unjust enrichment, is a purely equitable remedy….Given the equitable nature of the remedy, the issue of accounting is more appropriate as a bench, rather than jury, issue."); Merisant Co. v. McNeil Nutritionals, LLC, 515 F. Supp. 2d 509, 529 (E.D. Pa. 2007)  ("Whether to award an accounting of profits to the plaintiff is a decision that lies within the Court's discretion.")  However, if the Court finds that an instruction on disgorgement is proper, SurgiQuest respectfully submits that its proposed instruction more accurately reflects the standards applicable to a disgorgement analysis in the Third Circuit.

LEXION'S RESPONSE: Lexion responds that breaking the instruction on damages up into multiple instructions is unnecessary and contributes to unduly lengthening the jury instructions, potentially leading to jury confusion.  While there may not be any current Third Circuit case law on point, Lexion has demonstrated that a number of courts have found that there is no need to prove actual deception to recover damages for literally false statements made by SurgiQuest and respectfully refers the Court to Lexion's proposed instruction and the law cited in support. See e.g., Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d 302 (1st Cir. 2002) ("Though there was once support for the assertion that consumer deception cannot be presumed simply because a plaintiff alleges a literal falsity claim for money damages, …., it has become the practice of most circuits to apply the presumption to all literal falsity claims.").  Further, there is also support for Lexion's position damages may be recovered without a showing of actual deception when the false statements have been made intentionally and egregiously thus giving rise to a rebuttable presumption of consumer confusion. See PPX Enters, Inc. v. Audiofidelity Enters, Inc., 818 F.2d 266 (2d Cir. 1987); George Basch Co. Inc. v. Blue Coral, Inc., 968 F.2d 1532, 1536 (2d Cir. 1992). SurgiQuest also incorrectly states that Lexion is not entitled to recover both lost profits and corrective advertising, but both are forms of actual damage to Lexion.  *Calloway Golf*, on which SurgiQuest relies, is distinguishable because it does not address an award of lost profits damages and corrective advertising damages, but rather, addresses the award of unjust enrichment damages and corrective advertising damages.  Because lost profits and corrective advertising

I will now instruct you on the standards for monetary relief as they relate to this case. Only Lexion seeks to recover its damages and SurgiQuest profits, both of which are allowed to be recovered.[104]  If you find for Lexion on any one of its claims of false advertising, you must determine the amount of money, if any, that Lexion is entitled to be awarded.  I am instructing you on monetary relief only so that you will have guidance in the event you decide that SurgiQuest is liable and that Lexion is entitled to recover money from it.  [105]

Lexion must prove by a preponderance of the evidence that it is entitled to damages.  An advertismenet or promotion is harmful if there is a likelihood of injury to the plaintiff in the form of declining sales, loss of good will and the like.[106] To recover monetary damages, Lexion must demonstrate that it was damaged as result of SurgiQuest's misrepresentation or that SurgiQuest profited from that misrepresentation.[107] In other words, Lexion must only show "that the falsification or misrepresentation actually deceives a portion of the buying public."[108] However, this does not place upon the plaintiff a burden of proving detailed individualization of loss of sales. Such proof goes to amount of damages and not to the very right to recover.[109] The causal

---

expenses are both forms of compensatory damages, both can be recovered.  Otis Clapp & Son, Inc. v. Filmore Vitamin Co., 754 F.2d 738, 742, 747 (7th Cir. 1985) (affirming award of lost sales and corrective advertising damages).

[104] 15 U.S.C. Sec. 1117(a);

[105] 15 U.S.C. Sec. 1117(a); Restatement (Third) of Unfair Competition §§ 36-37.

[106] Warner Lambert, 204 F.3d at 91-92; U.S. Healthcare, Inc. v. Blue Cross of Greater Phila., 898 F.2d 914, 922 (3d Cir.)

[107] See 15 U.S.C.A. § 1117.

[108] U.S. Healthcare, Inc. v. Blue Cross of Greater Phila., 898 F.2d 914, 922 (3d Cir.) (citing Parkway Baking Co. v. Freihofer Baking Co., 255 F.2d 641, 648 (3d Cir.1958), cert. denied, 498 U.S. 816, 111 S.Ct. 58, 112 L.Ed.2d 33 (1990).

[109] Id. (quoting Parkway Baking, 255 F.2d at 648); see also Warner–Lambert, 204 F.3d at 92 ("[A] plaintiff seeking damages under § 43(a) must establish customer reliance but need not quantify loss of sales as that goes to the measure of damages, not plaintiff's cause of action.").

link can be met with circumstantial evidence rather than direct evidence.[110] That said, a finding of intentional or willful deception as a major part of defendant's marketing efforts contained in comparitive advertiing will justify a rebuttable presumption of causation and injury in fact.[111] If literal falsity is found, Lexion does not need to prove actual deception of consumers to recover damages for false statements made by SurgiQuest.[112]

Also, if you find that SurgiQuest acted intentionally and egregiously, you may also presume that consumers are in fact being confused or deceived and damages may be awarded.[113]

One type of damages that Lexion may recover is damages for its lost sales or lost revenue.  If Lexion has proven that SurgiQuest has engaged in false advertising or unfair competition, then you may award any damage sustained by plaintiff, including for any lost sales or other lost revenue that Lexion has proven by a preponderance of the evidence.[114]

---

[110] See BASF Corp. v. Old World Trading Co., 41 F.3d 1081, 1093–1094 (7th Cir.1994); Efco Corp. v. Symons Corp., 219 F.3d 734, 740 (8th Cir. 2000) (finding causation from circumstantial evidence of damage where sales were decreasing while Plaintiff's sales were increasing.).

[111] Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F.Supp.2d 384 (D. NJ 2009).

[112] Merck Eprova AG v. Gnosis S.p.A., 760 F.3d 247, 256 (2d Cir. 2014) ("[W]here a defendnat's advertising of products is literally false, a Lanham Act plaintiff need not 'provide evidence of actual consumer confusion by resort to witness testimony, consumer surveyrs, or other such evidence in order to establish entitled to damages under the Lanham Act.'. . . Once literal falsity . . .was proved, no further evidence of actual consumer confusion was necessar."; "We hold that where, as here, a plaintiff has met its burden of proving deliberate deception in the context of a two-player market, it is appropriate to utilize a presumption of injury." Defendant's profits were awarded); Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d 302 (1st Cir. 2002) ("Though there was once support for the assertion that consumer deception cannot be presumed simply because a plaintiff alleges a literal falsity claim for money damages, ...., it has become the practice of most circuits to apply the presumption to all literal falsity claims.") B. Sanfield, Inc. v. Finlay Fine Jewelry Corp., 168 F.3d 967, 971 (7th Cir.1999) (ruling, on a damages claim, that "[w]here the statement in question is actually false, then the plaintiff need not show that the statement either actually deceived consumers or was likely to do so"). *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1146 (9th Cir. 1997); *PPX Enterprises v. Audiofidelity Enterprises,* 818 F.2d 266, 272-73 (2d. Cir. 1987).

[113] Res. Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc., 926 F.2d 134 (2d Cir. 1991); U-Haul Int'l, Inc. v. Jartran, Inc., 793 F.2d 1034, 1040-41 (9th Cir.1986); AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1542 (11th Cir.1986), cert. denied, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987); see also Restatement (Third) of the Law of Unfair Competition § 22 (Tent. Draft No. 2 March 23, 1990).

[114] 15 U.S.C. §1117(a); Restatement (Third) of Unfair Competition § 36; McCarthy on Trademarks, §30:79 (2014) (noting that plaintiff's damages may be measured by the profits lost by the plaintiff because of the defendant's unlawful conduct under the Lanham Act)

Another type of damages that may be recoverable is damages for the cost of corrective advertising.[115]  If Lexion has proven that SurgiQuest has engaged in false advertising or unfair competition, you may award any costs of pre and post trial corrective advertising that Lexion has proven by a preponderance of the evidence.[116]  A plaintiff need not show a specific measure of harm to its goodwill and reputation in order to recover corrective damages.[117] The costs of corrective advertising include reasonable expenditures made by Lexion in order to prevent, correct, or to be made to mitigate the confusion or deception of prospective purchasers resulting from SurgiQuest's false advertising or unfair competition.[118]

In addition, if Lexion has proven that SurgiQuest has engaged in false advertising or unfair competition, Lexion is also entitled to recover SurgiQuest's net profits resulting from false advertising and/or unfair competition.  In deciding whether to award SurgiQuest's net profits as damages, you may consider factors including but not limited to (1) whether SurgiQuest had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by Lexion in asserting its rights, and (5) the public interest in making the misconduct unprofitable.[119]  However, there is no requirement that Lexion prove that consumers have been deceived.[120]

---

[115] *U-Haul Intl. Inc. v. Jartran Inc.*, 793 F.2d 1034, 1037 (9th Cir. 1986);  *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 265-66 (2d Cir. 2014).

[116] Restatement (Third) of Unfair Competition § 36.

[117] See See HM Electronics, Inc. v. R.F. Technologies, Inc., 2015 WL 1757804 (S.D. Calif. April 17, 2015); Adray v. Adry-Mart, Inc., 76 F.3d 984, 989 (9th cir. 1995);

[118] Restatement (Third) of Unfair Competition § 36; See See Adray v. Adry-Mart, Inc., 76 F.3d 984, 989 (9th cir. 1995); Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co., 561 F.2d 1365, 1374-76 (10th Cir. 1977); Callaway Golf Co. v. Slazenger, 384 F.Supp.2d 735, 740 (D. Del. 2005); HM Electronics, Inc. v. R.F. Technologies, Inc. 2015 WL 1757804 (S.D. Calif. April 17, 2015).

[119] *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 175 (3d. Cir. 2000).

[120] *Williamson-Dickie Mfg. Co. v. Davis Mfg. Co.*, 251 F.2d 924, 927 (3d. Cir. 1958); See Banjo Buddies, 399 F.3d at 175–76 (finding that district court did not abuse its discretion in ordering an accounting of profits because, in part, it is likely that defendant's conduct diverted sales based on material similarities of packaging and marketing schemes, even though no actual confusion was shown)..

In assessing SurgiQuest's profits, Lexion is only required to prove the amount of the sales of SurgiQuest's products.  It is SurgiQuest's responsibility to prove all elements of cost or deduction claimed.[121]  SurgiQuest's costs or deductions include operating, overhead, and production costs concerning the products for which Lexion has made a claim for SurgiQuest's profits.  SurgiQuest has the burden of proving by a preponderance of the evidence, these expenses and any portion of the profit attributable to factors other than any false and/or misleading statements made by SurgiQuest.[122]

---

[121] 15 U.S.C. Sec. 1117(a); Restatement (Third) of Unfair Competition §§ 36-37; *Banjo Buddies, Inc. v. Renosky,* 399 F.3d 168, CITE (3d. Cir. 2000).

[122] *Banjo Buddies, Inc. v. Renosky,* 399 F.3d 168, CITE (3d. Cir. 2000); *American Honda Motor Co. v. Two Wheel Corp.,* 918 F.2d 1060, 1063 (2d Cir.1990); *Lindy Pen Co. v. Bic Pen Corp.,* 982 F.2d 1400, 1405-1408 (9th Cir.1993); *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.,* 62 S. Ct. 1022 (1942);  5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30.66 (4th ed. 2016).

## LOST PROFITS DAMAGES UNDER THE LANHAM ACT

### [SurgiQuest Proposed][123]

Lexion claims that it is entitled to an award of profits that Lexion claims it lost from sales of its Insuflow® and Synergy® products from 2013 through trial as the result of false or misleading statements SurgiQuest made about the AirSeal® product in commercial advertising or promotion. To recover damages for lost profits under the Lanham Act, Lexion must prove it was actually damaged rather than a mere tendency to be damaged.[124]

[For each SurgiQuest's advertising statement about AirSeal that you find to be false or misleading, if any, Lexion must show that the advertising statement was a material factor in causing Lexion to lose sales in order to recover lost profit damages in connection with that statement.[125]   Put, differently, to recover its own lost profits, Lexion must prove by a preponderance of the evidence that its actual damages were causally related to actual customer confusion or deception of the purchasing public.[126]   One way for Lexion to prove this necessary

---

[123] **LEXION OBJECTION**: Lexion objects to SurgiQuest's proposed instruction for reasons previously discussed and respectfully refers the Court to its response to SurgiQuest's objection instruction No. 19 and proposed instruction for monetary relief which it incorporates by reference herein. In addition, Lexion objects that if such an instruction about causation is given, SurgiQuest's proposed instruction is incomplete.  The jury should be instructed that Lexion may prove causation through circumstantial evidence, not direct evidence.  Efco Corp. v. Symons Corp., 219 F.3d 734, 740 (8th Cir. 2000) (finding causation from circumstantial evidence of damage where sales were decreasing while Plaintiff's sales were increasing), see.).  For example, here, SurgiQuest has clearly targeted Lexion as a competitor, including with respect to heating and humidification and in the robotic surgery market; and, the sales of SurigQuest's AirSeal system based on its false advertising impacts and causes harm to Lexion. See Zeneca Inc. v. Eli Lilli and Company, No. 99 CIV. 1452 (JGK), 1999 WL 509471 (S.D.N.Y. July 19, 1999).

[124] Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384, 480 (D.N.J. 2009) ("a plaintiff seeking monetary rather than injunctive relief must show actual damages rather than a mere tendency to be damaged). Synygy v. Scott-Levin, 51 F.Supp.2d 570, 575 (E.D.Pa.1999).

[125] Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384, 486 (D.N.J. 2009) ("In order to prove causation under...the Lanham Act, the aggrieved party must demonstrate that the false advertisement actually harmed its business."); Peerless Heater Co. v. Mestek, Inc., No. 98-6532, 2000 WL 637082, at *4, 2000 U.S. Dist. LEXIS 6664, at *11 (E.D.Pa. May 12, 2000) ("To satisfy this causation requirement, the plaintiff must prove that the defendants' activities were a material cause of the injury.").

[126] *Rexall Sundown, Inc. v. Perrigo Company*, Case 2:07-cv-03397-JFB-ARL, Jury Charge, Document 258 at 42 (E.D.N.Y. April 5, 2010).

connection between SurgiQuest's false advertising and Lexion's lost profits is to show diversion of sales or customers.[127]][128]

Under the Lanham Act, Lexion's lost profits would be calculated by estimating the revenue Lexion lost due to SurgiQuest's allegedly false or misleading statements about the AirSeal® product and subtracting what it would have cost Lexion to generate that revenue.  In other words, Lexion can prove lost profit damages by showing both the amount of sales that it would have made, but did not make, because of SurgiQuest's alleged false advertising and the amount of profit that Lexion would have earned on each of those sales, net of all operating costs, overhead costs, production costs, and other deductible expenses that would have been incurred in making those sales.[129]

---

[127] Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384, 486 (D.N.J. 2009) ("One way for a plaintiff to prove causation for damages under § 35(a)(2) is to show diversion of customers");

[128] **LEXION OBJECTION:** Lexion objects that the proposed instruction places an incorrect a burden on Lexion to establish damages and proposed the following alternative instruction: [An advertisement or promotion is harmful, if there is a likelihood of injury to the plaintiff in the form of declining sales, loss of good will and the like. To recover monetary damages, Lexion must demonstrate that it was damaged as result of SurgiQuest's misrepresentation or that SurgiQuest profited from that misrepresentation.  In other words, Lexion must show that the falsification or misrepresentation actually deceives a portion of the buying public.  However, this does not place upon the plaintiff a burden of proving detailed individualization of loss of sales. Such proof goes to amount of damages and not to the very right to recover. The causal link can be met with circumstantial evidence rather than direct evidence. That said, a finding of intentional or willful deception as a major part of defendant's marketing efforts contained in comparative advertising will justify a rebuttable presumption of causation and injury in fact. **Authority:** See 15 U.S.C.A. § 1117; Warner Lambert, 204 F.3d at 91-92; U.S. Healthcare, Inc. v. Blue Cross of Greater Phila., 898 F.2d 914, 922 (3d Cir.)..  U.S. Healthcare, Inc. v. Blue Cross of Greater Phila., 898 F.2d 914, 922 (3d Cir.) (citing Parkway Baking Co. v. Freihofer Baking Co., 255 F.2d 641, 648 (3d Cir.1958), cert. denied, 498 U.S. 816, 111 S.Ct. 58, 112 L.Ed.2d 33 (1990).  Id. (quoting Parkway Baking, 255 F.2d at 648);. See BASF Corp. v. Old World Trading Co., 41 F.3d 1081, 1093–1094 (7th Cir.1994); Efco Corp. v. Symons Corp., 219 F.3d 734, 740 (8th Cir. 2000) (finding causation from circumstantial evidence of damage where sales were decreasing while Plaintiff's sales were increasing.); Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F.Supp.2d 384 (D. NJ 2009).

[129] Rexall Sundown, Inc. v. Perrigo Company, Case 2:07-cv-03397-JFB-ARL, Jury Charge, Document 258 at 42 (E.D.N.Y. April 5, 2010).

## <u>CORRECTIVE ADVERTISING UNDER THE LANHAM ACT</u>

### [SurgiQuest Proposed]

Lexion also claims it is entitled to an award of the costs required to conduct an informational advertising campaign both before trial and in the future to counteract the marketplace reaction caused by SurgiQuest's allegedly false or misleading advertising statements about AirSeal®.  Corrective advertising damages are typically the amount spent by a plaintiff to counteract the effects of a defendant's false advertising.   Although corrective advertising damages are usually awarded for costs actually incurred prior to trial, damages may be awarded to allow an aggrieved party to conduct corrective advertising after trial.[130] [131]  To grant future corrective advertising damages, however, there must be an economic rationale.[132]  [An award of money for post-trial corrective advertising must be justifiable as a surrogate for plaintiff's damages or defendant's profit.[133]][134]

---

[130] Callaway Golf Co. v. Slazenger, 384 F. Supp. 2d 735, 740 (D. Del. 2005).

[131] **OBJECTION:** Lexion objects to SurgiQuest proposed instruction for reasons previously discussed and respectfully refers the court to its response to SurgiQuest's objection to instruction No. 9, the objection to SurgiQuest's proposed instruction on monetary relief pursuant to the Lanham Act which it incorporates by reference herein. Lexion objects to the instruction in that the statement about corrective advertising damages being usually awarded for costs incurred prior to trial makes this type of damages for prospective corrective advertising sound unusual and overreaching.  In this case, because the nature of selling involves personal contact with hospitals, it will take years of effort to undo the damage done by SurgiQuest.  Simply because future corrective advertising damages may be "unusual" does not mean they are not appropriate in a particular case.  A discussion of the frequency with which relief is granted amounts to an improper comment on the evidence.  The jury should simply be instructed that corrective advertising damages may be recovered and what those are:  "reasonable expenditures made by the plaintiff in order to prevent, correct, or mitigate the confusion or deception of prospective purchasers resulting from the [defendant's] conduct."  Restatement (Third) of Unfair Competition, §36. *see also Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 492 (D. N.J. 2009) (awarding both past and future corrective advertising damages).

[132] Callaway Golf Co. v. Slazenger, 384 F. Supp. 2d 735, 740 (D. Del. 2005).

[133] Callaway Golf Co. v. Slazenger, 384 F. Supp. 2d 735, 741 (D. Del. 2005)

[134] **LEXION OBJECTION:** Lexion objects on the grounds that this will be confusing to the jury because it is certainly appropriate to aware both damages and corrective advertising. See. Otis Clapp & Son, Inc. v. Filmore Vitamin Co., 754 F.2d 738, 742, 747 (7th Cir. 1985) (affirming award of lost sales and corrective advertising damages).

[You cannot award Lexion monetary damages for both lost sales and future corrective advertising damages to compensate Lexion for any actual injury; you must choose one or the other. Here, an award of both lost sales and future corrective advertising damages to Lexion would result in double recovery, which is prohibited under the law.[135]] [136]

---

[135] Calloway Golf. Co. v. Slazenger, 384 F. Supp. 2d 735, 740-41 (D. Del. 2005) ("Callaway was in fact awarded $1.1 million in unjust enrichment damages to compensate it for sales lost to Dunlop….To allow Callaway to receive another $1.1 million for prospective corrective advertising would indeed be an unfair doubling of the damage award.").

[136] **LEXION OBJECTION:** Lexion objects on the grounds that this will be confusing to the jury because it is certainly appropriate to award both damages and corrective advertising. See. Otis Clapp & Son, Inc. v. Filmore Vitamin Co., 754 F.2d 738, 742, 747 (7th Cir. 1985) (affirming award of lost sales and corrective advertising damages).

## DAMAGES FOR DELAWARE UNFAIR COMPETITION

### [SurgiQuest Proposed]

[For Lexion to recover any monetary relief for its Delaware unfair competition claim separately from its Lanham Act false advertising claim, it must prove by a preponderance of the evidence all of the elements of a Delaware unfair competition claim and that it suffered actual monetary damage resulting from SurgiQuest's unfair competition. However, you cannot award Lexion monetary damages for alleged lost sales in connection with both its Lanham Act false advertising claim and unfair competition claim. Because Lexion's false advertising claim and its unfair competition claim are based on the same alleged conduct, an award of monetary damages for both claims to compensate for lost sales would result in impermissible double recovery.[137]][138]

---

[137] *See* Granger v. One Call Lender Servs., LLC, No. CIV.A. 10-3442, 2012 WL 3065271, at *3 (E.D. Pa. July 26, 2012) (prohibiting recovery of Lanham Act damages as impermissible double recovery for same infringing activity based on multiple theories of liability).

[138] **LEXION OBJECTION:** Lexion objects to breaking the instruction on damages up into multiple instructions it is unnecessary to do so and this contributes to unduly lengthening the jury instructions, potentially leading to jury confusion.

## **DISGORGEMENT OF PROFITS UNDER THE LANHAM ACT**

## **[SurgiQuest Counterproposal Only]**[139]

For Lexion to be entitled to an award of profits earned by SurgiQuest as a form of unjust enrichment, Lexion must prove by a preponderance of the evidence that the principles of equity warrant disgorgement of SurgiQuest's profits,[140] and that SurgiQuest's sales for which it seeks disgorgement occurred because of the alleged false advertising.[141]

There are five factors that must be considered to determine whether the principles of equity warrant such relief.  These are: (1) whether SurgiQuest had the intent to confuse or deceive; (2) whether sales have been diverted; (3) whether there are other adequate remedies for Lexion (such as injunctive relief or compensatory damages); (4) whether there was any unreasonable delay by Lexion in asserting its rights; and (5) the public interest in deterring such conduct.[142]  SugiQuest's intent is an important—but not indispensable—factor in evaluating whether equity supports disgorging the SurgiQuest's profits.[143]  [A finding that SurgiQuest's actions were not willful or deliberate may strongly weigh against an award of SurgiQuest's profits.[144]][145]

---

[139] **LEXION OBJECTION**: Lexion objects to breaking the instruction on damages up into multiple instructions it is unnecessary to do so and this contributes to unduly lengthening the jury instructions, potentially leading to jury confusion.

[140] Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384, 484 (D.N.J. 2009) ("For disgorgement of profits, a plaintiff has the burden of proving that such a remedy is warranted"); Merisant Co. v. McNeil Nutritionals, LLC, 515 F. Supp. 2d 509, 529 (E.D. Pa. 2007) (applying *Banjo Buddies* in the false advertising context).

[141] Castrol, Inc. v. Pennzoil Quaker State Co., 169 F. Supp. 2d 332, 343 (D.N.J. 2001) ("Surely, Castrol must demonstrate with reasonable certainty the portion of Pennzoil's profits attributable to the willful and intentional false advertising before the Court can order disgorgement"); Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384, 484 (D.N.J. 2009) ("The plaintiff bears the burden of showing that the sales for which it seeks disgorgement occurred because of the alleged false advertising.")

[142] *Banjo Buddies, Inc. v. Renosky,* 399 F.3d 168, 175 (3d. Cir. 2000).

[143] Banjo Buddies, Inc. v. Renosky, 399 F.3d 168, 175 (3d Cir. 2005) ("GEH's actions were not willful or deliberate….This finding strongly militates against an award of profit."

[144] Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384, 485 (D.N.J. 2009).

Lexion also bears the burden of proving SurgiQuest's gross revenue in the United States by a preponderance of the evidence.  SurgiQuest then has the burden of proving the cost of its goods and packaging by a preponderance of the evidence.[146]  Net profits are determined by deducting costs to SurgiQuest from SurgiQuest's gross revenue on the sale of its SurgiQuest's AirSeal® product.  [If SurgiQuest had a net operative loss and negative net earnings at any point in the relevant time period, then Lexion would not be able to disgorge any profits from SurgiQuest for that time period.][147]

---

[145] **LEXION OBJECTION:** Lexion objects that this instruction will be confusing to the jury in view of the prior sentence and incorrectly states the law as willfulness is only factor to consider in evaluating SurgiQuest's profits. See *Banjo Buddies, Inc. v. Renosky,* 399 F.3d 168, 175 (3d. Cir. 2000).

[146] Banjo Buddies, Inc. v. Renosky, 399 F.3d 168, 176 (3d Cir. 2005) (The Lanham Act provides that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed")

[147] **LEXION OBJECTION:** Lexion further objects to SurgiQuest's instruction as it incorrectly suggests that disgorgement of profits shall not be awarded where the defendant may suffer a loss.  The Seventh Circuit has said that under the Lanham Act's grant of discretion, it is proper to estimate lost profits of plaintiff where the infringer lost money, because plaintiff should not be prejudiced by defendant's inefficiency. See Otis Clapp & Son v. Filmore Vitamin Co., 754 F.2d 738 (7th Cir. 1985). Further, Lexion objects to the SurgiQuest's counterproposal instruction on disgorgement as is does not properly instruct the jury as to SurgQuest's burden of proof with respect to its alleged deductions.  Where, during infringement period under the Lanham Act, the defendant has some loss years and some profit years, defendant is not entitled to set off loss years against profit years, but must account to plaintiff for profits made in any one year. See 5 McCarthy on Trademarks and Unfair Competition § 30:70 (4th ed.) (citing Wolfe v. National Lead Co., 272 F.2d 867 (9th Cir. 1959)); Jones Apparel Group, Inc. v. Steinman, 466 F. Supp. 560 (E.D. Pa. 1979) (cannot offset losses on sales to "unload his inventory" after discovering that articles were infringing).

## 21.    PUNITIVE DAMAGES UNDER DELAWARE COMMON LAW[148]

If you decide to award compensatory damages to Lexion for unfair competition under Delaware Common Law, you must determine whether SurgiQuest is also liable to Lexion for punitive damages.

Punitive damages are different from compensatory damages.  Compensatory damages are awarded to compensate the plaintiff for the injury suffered.  Punitive damages, on the other hand, are awarded in addition to compensatory damages  You may award punitive damages to punish a party for outrageous conduct and to deter a party, and others like it, from engaging in similar conduct in the future.  To award punitive damages, you must find by a preponderance of the evidence that SurgiQuest acted intentionally or recklessly. Punitive damages cannot be awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence.

Intentional conduct means it is the person's conscious object to engage in conduct of that nature.  Reckless conduct is a conscious indifference that amounts to an "I don't care" attitude.  Reckless conduct occurs when a person, with no intent to cause harm, performs an act so unreasonable and dangerous that it knows or should know that there is an eminent likelihood of harm that can result.  Each requires that the defendant foresee that its conduct threatens a particular harm to another.

In determining any award of punitive damages, you may consider the nature of SurgiQuest's conduct and the degree to which the conduct was reprehensible.  Finally, you may assess an amount of damages that will deter SurgiQuest and others like it from similar conduct in the future.  You may consider SurgiQuest's financial condition when evaluating deterrence.  Any

---

[148] DEL. P.J.I. CIV. § 22.27 (2000).

award of punitive damages must bear a reasonable relationship to Lexion's compensatory damages. If you find that Lexion is entitled to an award of punitive damages, state the amount of punitive damages separately on the verdict form.

## 22.     DELIBERATION AND VERDICT

How you conduct your deliberations is up to you. But, however you conduct those deliberations, please remember that your verdict must represent the considered judgment of each juror.

It is your duty, as jurors, to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because the opinion of your fellow jurors, or forth the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges – judges of the facts, not me. Your sole interest is to seek the truth from the evidence in that case. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom, your foreperson will give the form to my Deputy Clerk and your verdict shall be announced.

It is proper to add the caution that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

That concludes the part of my instructions explaining the rules for considering the testimony and evidence. Now let me finish up by explaining how you may communicate questions or messages to the court.

Once you start deliberating, do not talk to the Jury Officer, to my Deputy Clerk, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the Jury Officer. The question will be given to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally sent to me through the foreperson, who by custom of this court is juror Number 1.

One more thing about messages. Do not ever write down or tell anyone else how you stand on your votes. For example, do not write down or tell anyone else that you are split 6-2, or 4-4, or whatever your vote happens to be. That should stay secret until you are finished.

Let me finish by repeating something I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in favor of either party. You must decide the case yourselves based on the evidence presented.[149]

---

[149] The Honorable Judge Sleet, Miscellaneous Jury Instructions (Rev: 1/18/06), at 7-9