|  |  |
|---|---|
| SURGIQUEST<br><br>     Plaintiff,<br>     Counterdefendant,<br><br>v.<br><br>LEXION MEDICAL, INC.<br><br>     Defendant,<br>     Counterplaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     C.A. No. 14-382-GMS |

## **MEMORANDUM**

## I. **INTRODUCTION**[1]

In this false and misleading advertising and unfair competition action, Plaintiff, and counterdefendant, SurgiQuest ("SurgiQuest") alleges that Lexion Medical, Inc., and counterplaintiff, ("Lexion") participated in false and misleading advertising activities. (D.I. 1.) The court held a six-day jury trial in this matter on April 3 through April 11, 2017. (D.I. 261-66.) At trial, Plaintiff properly moved for judgment as a matter of law ("JMOL") at the end of Defendant's case pursuant to Rule 50(a) of the Federal Rules of Civil Procedure and again at the close of evidence. (D.I. 243); (D.I. 253 at 1-2); Tr. 1422:9-16.[2]

On April 11, 2017, the jury returned a verdict in favor of Lexion on the issue of false advertising under the Lanham Act and under Delaware's Unfair Competition Law, and awarded

---

[1] All docket citations refer to Civil Action No. 14-382-GMS. The abbreviation "Tr." refers to the transcript from the six-day jury trial held on April 3, 2017 through April 11, 2017, (D.I. 261-66, 272.)

[2] On April 11, 2017 prior to the court handing the case to the jury, SurgiQuest moved for judgment as a matter of law under Fed. R. Civ. P. 50(a). The court declined to rule on the Motion at trial. Tr. 1422:14-16. The parties do not agree that this motion properly preserved the right to move for JMOL under 50(b). (D.I. 257 at 1-2.)

compensatory damages in the amount of $2.2 million and punitive damages of $10 million. Tr. 1782:3-1783:24; (D.I. 253 at 2.) The court entered judgment on the verdict on April 13, 2017. (D.I. 249.)

Presently before the court is SurgiQuest's motion for judgment as a matter of law and Lexion's motions for permanent injunction, disgorgement of profits, attorney's fees, prejudgment interest, and post-judgment interest. (D.I. 252); (D.I. 255.)[3] Having considered the entire record in this case, the substantial evidence in the record, the parties' post-trial submissions, and the applicable law, the court will deny all motions. The court's reasoning follows.

## II.    STANDARD OF REVIEW

### A.    Renewed JMOL Motions

To prevail on a renewed motion for judgment as a matter of law following a jury trial and verdict, the moving party "must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (quoting *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984)). "Substantial evidence" is defined as "such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp.*, 732 F.2d at 893.

The court should only grant the motion "if, viewing the evidence in the light most favorable

---

[3] Plaintiff's motion asserts that it is entitled to judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure for false advertising and resulting damages. (D.I. 252.) In its motion, Plaintiff argues that if Defendant moves for a new trial, they are entitled to a conditional new trial. (D.I. 253 at 25.) Because Defendant does not move for a new trial, Plaintiff's conditional motion for new trial is moot. (D.I. 257 at 15-16.) Defendant's motion asserts that it is entitled to a permanent injunction, disgorgement of profits, attorney's fees, prejudgment interest, and postjudgment interest. (D.I. 255.)

to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) (citing *Wittekamp v. Gulf Western Inc.*, 991 F.2d 1137, 1141 (3d Cir. 1993)). "In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Lightning Lube*, 4 F.3d at 1166 (citing *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 190 (3d Cir. 1992)). Rather, the court must resolve all conflicts of evidence in favor of the non-movant. *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991); *Perkin-Elmer Corp.*, 732 F.2d at 893. "The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Lightning Lube*, 4 F.3d at 1166 (quoting *Patzig v. O'Neil*, 577 F.2d 841, 846 (3d Cir. 1978)).

## IV.    DISCUSSION[4]

Having considered the substantial evidence in the record, the parties' post-trial submissions, and the applicable law, the court will deny all of SurgiQuest's motions as well as Lexion's motions for permanent injunction, disgorgement of profits, attorneys' fees, and prejudgment interest and grant Lexion's motion for postjudgment interest. The court's reasoning

---

[4] Preliminarily, Lexion argues that SurgiQuest waived the right to seek JMOL on all issues raised in its motion. (D.I. 257 at 2); (D.I. 243). Federal Rule of Civil Procedure 50(a) provides that a JMOL motion "may be made at any time before the case is submitted to the jury[,]" and "must specify the judgment sought and the law and facts that entitle the movant to the judgment." If the court does not grant the JMOL motion, Rule 50(b) permits a party to renew the motion. "A post-verdict motion may not be made on grounds not included in the earlier motion." *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1105–06 (Fed. Cir. 2003); *Mosley v. Wilson*, 102 F.3d 85, 90 (3d Cir. 1996). Given that it has concluded there is sufficient evidence to support the jury's verdict, the court is not going to decide the issue of waiver.

follows.[5]

## A. Monetary Damages

First, SurgiQuest moves for judgment as a matter of law on the jury's award of monetary damages. (D.I. 253.) SurgiQuest asserts that no reasonable jury could have awarded monetary damages because (1) Lexion failed to prove causation between the false advertising claims and damages; (2) the jury instructions on causation and damages were incorrect; and (3) hearsay and salesperson confusion evidence was improperly admitted. "To recover damages, a plaintiff must show that the 'falsification [or misrepresentation] actually deceives a portion of the buying public.'" *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 922 (3d Cir. 1990) (citing *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 648 (3d Cir. 1958). "This does not place upon the plaintiff a burden of proving detailed individualization of loss of sales. Such proof goes to quantum of damages and not to the very right to recover. However, there must be a showing of *some customer reliance* on the false advertisement[.]" *Parkway Baking*, 255 F.2d at 648; *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 92 (3d Cir. 2000) ("we held [in *Parkway Baking*, 255 F.2d at 648] that a plaintiff seeking damages under § 43(a) must establish customer reliance but need not quantify loss of sales as that goes to the measure of damages, not plaintiff's cause of action."); *Larry Pitt & Assocs. v. Lundy Law LLP*, 2018 WL 925011, at *4 (E.D. Pa. Feb. 15, 2018).

---

[5] At the outset, the court has been at pains to put in the time and resources necessary to resolve the disputes where, in the court's view, the parties have failed from the beginning to act as faithful agents of the law. The art of advocacy is not one of mystery. In other words, this is not *Murder, She Wrote*. Our adversarial system relies on advocates to inform the discussion and raise the issues to the court. It is not the court's job to manufacture arguments or research for a party, as even the most novice counsel should know. At the pre-trial conference, the court noted it is "disappointed, quite frankly, at what [it] ha[s] seen[]" leading up to trial. (D.I. 223 at 6.) Unfortunately, the same can be said about the parties' post-trial submissions.

4

## 1. False Advertising[6]

SurgiQuest asserts that Lexion failed to provide sufficient evidence that the false statements had a causal link to Lexion's lost sales. (D.I. 253 at 4-6.) SurgiQuest further contends that marketplace competition does not provide a nexus for false advertising damages and argues that is the only basis for which Lexion tried to show any lost sales. (D.I. 253 at 12.) In contrast, Lexion asserts that SurgiQuest did not, and cannot, prove a lack of sufficient evidence because the statements were literally false, consumers purchased the AirSeal product and stopped purchasing Lexion's product. Additionally, Lexion contends that evidence of confusion demonstrated that the false advertising *actually deceived* a portion of the buying public. (D.I. 257 at 4-7.) The court agrees for two main reasons.

First, Lexion presented more than enough evidence that consumers stopped purchasing Lexion's products as a result of SurgiQuest's false statements. Lexion's witness, Dr. Paul Kobza, stated that as a result of being "misled" by SurgiQuest's false statements, he stopped using Lexion's Insuflow product and switched to SurgiQuest's AirSeal product. Tr. 807:6-808:9, 812:16-23. While Dr. Kobza stopped using AirSeal "[i]mmediately[]" when he learned it could draw operating room air into the abdomen, Lexion never got the account back. Tr. 808:10-809:4,

---

[6] A plaintiff suing for false advertising under the Lanham Act ordinarily must show "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising[,]" and that that occurs "when deception of consumers causes them to withhold trade from the plaintiff." Lanham Act, § 43(a)(1)(B), 15 U.S.C. § 1125(a)(1)(B). *Lexmark Int'l, Inc v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1391 (2014); *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 2017 WL 3021066, at *3 (D. Del. July 14, 2017) (Sleet, J.). Similarly, Delaware's unfair competition law requires that "defendant wrongfully interferes, and thereby defeats the plaintiff's legitimate expectancy and causes him harm." *Deston Therapeutics LLC v. Trigen Labs. Inc.*, 723 F. Supp. 2d 665, 676 (D. Del. 2010). A plaintiff, however, can prevail in a false advertising action if it proves that the advertisement "is either (1) literally false or (2) literally true or ambiguous, but has the tendency to deceive consumers." *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002). Proof of literal falsity relieves the plaintiff of its burden to prove *actual* consumer deception. *Id.* at 587; *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014).

815:16-816. Similarly, Tiffany Brenton, a robotic coordinator at Peace Health Hospital, testified she was told AirSeal did not suck air into the abdomen, which partially impacted the hospital's purchasing decision. Tr. 580:25-581:15. Ms. Brenton explained AirSeal's smoke evacuation capability "for the surgeon to be able to see while they operate" was a key reason why the hospital wanted the AirSeal system. Tr. 581:6-583:25.

Second, the jury heard evidence relevant to establish the *fact of damage* and whether "confused" buyers purchased AirSeal or failed to purchase Lexion's products as a result. The jury heard the testimony of: (1) Bridget Moriarty who identified multiple consumer accounts that believed AirSeal heated and humidified, and stopped buying or reduced their purchases from Lexion as a result (Tr. 502:7-504:7); (2) Brett Emery who testified that his hospital system purchased fewer Insuflow devices because they were using AirSeal, which did the *exact same thing* as Lexion's products (Tr. 620-21); and (3) Robert Fadem, a SurgiQuest sales representative who testified SurgiQuest targeted Lexion's customers by telling them AirSeal performed identically to Insuflow, and that they could justify the cost of their purchase by getting rid of Insuflow. Tr. 290-93. This strategy proved successful at Northside Hospital where Lexion lost an account that produced revenue of $100,000 per year. Tr. 290-93, 722-23.

Because evidence at trial demonstrated that SurgiQuest's false advertising *actually deceived* customers purchasing the device and Lexion lost sales and customers as a result, the court concludes that the evidence at trial was sufficient to support a verdict that the false advertising had a causal connection to Lexion's loss. Tr. 574-81, 610-15, 1313-12.

6

## 2. The Jury Instructions Were Proper[7]

Next, SurgiQuest's post-trial motion asserts that absent incorrect jury instructions, no reasonable jury could have awarded damages. (D.I. 253 at 16.) SurgiQuest argues that the "errors in the jury instructions directly contributed to the insufficiency of the evidence[]" and can, therefore, be raised at JMOL. (D.I. 268 at 8.) The court disagrees. "[J]udgment as a matter of law is not the appropriate remedy for [jury instruction] errors. Rather, prejudicial errors in jury instructions are remedied by a new trial." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 585 F. Supp. 2d 562, 567 (D. Del. 2008) (Farnan, J.), *aff'd*, 711 F.3d 1348 (Fed. Cir. 2013). While disputes over jury instructions occur, "the precise wording of jury instructions is left to the discretion of the [c]ourt." *Power Integrations*, 585 F. Supp. 2d at 567 (citing *United States v. Flores*, 454 F.3d 149, 161 (3d Cir. 2006)). In its brief, SurgiQuest asserts that "[a] new trial is not warranted[]" in this case and it, therefore, only seeks a new trial if Lexion does. (D.I. 253 at 25.) Because Lexion did not move for a new trial, the court need not address this issue. However, even if the complaint about jury instructions were not waived, the court will deny the motion on its substantive merits for the reasons that follow.

### i. Literal Falsity

First, SurgiQuest argues that the jury was improperly instructed that "[i]f literal falsity is found, Lexicon does not need to prove actual deception of consumers to recover damages for false statements made by SurgiQuest." (D.I. 253 at 16); Tr. 1712:15-20. SurgiQuest argues that "[t]his instruction contradicts the Third Circuit's holding in *Warner-Lambert* that a party seeking

---

[7] At the pre-trial conference, the court expressed frustration with the excessive length of the jury instructions explaining "140 pages of proposed final jury instructions? Are you kidding me?" (D.I. 223 at 6, 89.)

7

monetary damages for false advertising must show customer reliance on the false or misleading statements and thus demonstrate a causal nexus between the statements and damages. *Warner-Lambert Co.*, 204 F.3d at 92; *Labware, Inc. v. Thermo Labsystems, Inc.*, 2005 WL 1541028, at \*9, 12 (E.D. Pa. June 29, 2005); *Synygy, Inc. v. Scott–Levin, Inc.*, 51 F. Supp. 2d 570, 575, 577 (E.D. Pa. 1999); *Parkway Baking*, 255 F.2d at 648; *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir. 1993) ("[A] plaintiff must prove either literal falsity or consumer confusion, but not both.").

Prior to finalizing the instruction on literal falsity, the court exhaustively went through the parties' objections to the jury instructions at the pre-trial conference and during trial. (D.I. 223 at 51-57); Tr. 1603:11-1615.[8]  In doing so, the court "thoroughly disagree[d] with the rather hyperbolic statement from SurgiQuest" about the false or misleading statements. (D.I. 223 at 90.) After considering the case law and parties' arguments, the court decided to use Lexion's proposal for the jury instructions as to false advertisement and confusion. *Id*. at 91-92.  Nevertheless, as previously explained, Lexion presented evidence that consumers were *actually* deceived by the false statements and provided ample evidence of a causal connection between the false statements and damages.

### ii.    *Proof of Actual Confusion*

Next, SurgiQuest takes issue with the court's instruction that "[e]vidence of actual[] confusion is difficult to find and even a *few* incidents may[,] therefore[,] be probative." (D.I. 253

---

[8] The court explained that it wanted to "make sure [the] whole [agreed upon instruction is] on the record" and that it does not "want there to be slippage" so the entire agreed upon instruction was read into the record. Tr. 1613:4-5, 1614:2-4. At the end of deliberations about literal falsity, both parties indicated that they were satisfied with the instruction. Tr. 1615:3-6, 1705. SurgiQuest argues that this instruction improperly eliminates the burden of proof required to prove false advertising damages. (D.I. 253 at 16.) However, there was no objection to this during trial and, regardless, there was sufficient evidence of a causal connection between the statements and harm.

at 17); Tr. 1647, 1707. SurgiQuest maintains that the Lanham Act requires proof that a substantial number of consumers were misled by the advertisements and that the court improperly relied on trademark law. (D.I. 253 at 17); *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129, 136 (3d Cir. 1994). The court recognizes that there is a dearth of case law explaining the proof of actual confusion requirement in the false advertising context. Tr. 1638. The court, therefore, determined that further evidence on the issue can be found in Circuit precedent in the area of trademark law. Tr. 1646-1647:13. The Third Circuit often refers to trademark law when deciding false advertising cases because both causes of action arise out of the same section of the Lanham Act. *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 211, n.6 (3d Cir. 2014). Courts outside of the Third Circuit have taken similar positions. *Cashmere & Camel*, 284 F.3d at 314-315; *U-Haul Int'l Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1041 (9th Cir. 1986); *Cuisinarts, Inc. v. Robot-Coupe Intern. Corp.*, 509 F. Supp. 1036, 1044 (S.D.N.Y 1981).[9]

Even if the instruction was not correct, the error was harmless for at least two reasons: First, while SurgiQuest's motion for JMOL concerns damages, the challenged instruction is not a damages instruction, but was given in the context of an instruction on proof of confusion necessary if a statement *was not* literally false. Tr. 1706-07. SurgiQuest has not challenged the jury's liability finding and Lexion presented evidence that SurgiQuest made literally false statements. Thus, this instruction likely had no impact on the jury's determination. (D.I. 257 at 13-14.) Second, Instruction 14 stated that:

---

[9] During the negotiations on this instruction, both parties had to convince the court that the different iterations of the instruction were appropriate as the court repeatedly stated it was "not comfortable" with the language. Tr. 1638-44:25, 1641:20-1642:6. This continued until SurgiQuest explained it was not comfortable using a standard found in trademark law in the false advertising context because it "lower[ed] the[] standard" from requiring proof that a substantial portion of the buying public was deceived to even a few instances are probative of confusion. Tr. 1645:2-25. The court explained, however, that it "[did not] think that is what it says." Tr. 1645:20.

> For you to find that a statement is true but misleading, the party in the position of the plaintiff must show that the statement actually deceived or had the tendency to deceive a *substantial segment* of the audience. Put differently, if a challenged advertising statement is not literally false, *a party cannot* obtain relief under the Lanham Act by arguing how consumers could react; it must show how consumers actually do react.

Tr. 1706:18-25. Therefore, SurgiQuest's contention that the instruction on actual confusion allowed the jury to improperly use a single incident as evidence of causation of harm is inconsistent with the court's instruction.

### iii.  *Presumptions of Intent*

Finally, SurgiQuest takes issue with the instruction that "[i]f a party demonstrates that the defendant has intentionally set out to deceive the public and its conduct in this regard is of an egregious nature, a presumption arises that consumers are, in fact, being deceived." (D.I. 253 at 17); Tr. 1707. Regardless, the instruction was given in the context of where the statement *was not* literally false, which is not the case here. As previously explained, Lexion presented evidence that SurgiQuest made literally false statements, which actually deceived consumers. The presumption at issue is, therefore, not necessary to the outcome of the case. Thus, the court finds the jury instructions proper.

### 3.  Hearsay & Salesperson Confusion Evidence Was Properly Admitted

Next, SurgiQuest argues that the court improperly admitted (1) hearsay evidence; and (2) salesperson confusion evidence. The court cannot agree for the reasons that follow.

### i.    Hearsay Evidence[10]

Whether a disputed statement is hearsay frequently turns on purpose for which it is offered and courts have the responsibility to assess independently whether an ostensible nonhearsay purpose is valid. Fed. R. Evid. 801(c); *United States v. Sallins*, 993 F.2d 344 (3d Cir. 1993). SurgiQuest argues that the court improperly allowed Lexion sales representatives to testify about what customers told them about the AirSeal product. (D.I. 253 at 19.)  The court, however, explained in detail why the evidence was not "hearsay." Tr. 492-99.[11]  For example, the court explained that Ms. Moriarty could not tell the jury that customers said "I was confused to prove customer confusion" because that is hearsay and her statements proclaiming confusion would be inherently unreliable. Tr. 496:4-9, 495:4-496:9, 20-22.  The customer statements are about the capabilities of the AirSeal System, which are offered to show confusion exhibited by customers; *i.e.* that customers received a false impression about the AirSeal system. The court, therefore, finds that the statements were properly admitted.

### ii.    Salesperson Confusion Evidence

SurgiQuest also argues that the court erred by "admitting evidence of salesperson confusion

---

[10] Once again, counsel failed to follow the clear procedures of the court. "The court has a procedure whereby attorneys are to bring evidentiary issues to the [c]ourt's attention before the issues come up at trial. Counsel notified the [c]ourt about this rather complicated issue as Ms. Moriarty was taking the stand." Tr. 493:2-6.

[11] The court engaged in a lengthy analysis to determine whether the testimony elicited was hearsay. Tr. 492-99. The court explained that "the first level of hearsay analysis [] concerns the underlying statements to show confusion. As the [c]ourt already noted, the relevant declarant here is the customer. If Ms. Moriarty plans to testify that customers said 'AirSeal heats and humidifies the carbon dioxide,' or "Airseal does not pull air in from the operating room into the abdomen,' then the [c]ourt agrees with Mr. Wille, that those statements are not hearsay. They are not offered to prove that AirSeal heats and humidifies the carbon dioxide, or that AirSeal does not pull air from the operating room into the abdomen. Instead, those statements would be offered to show circumstantial evidence of customer confusion." Tr. 494:11-23.  "If, however, Ms. Moriarty plans to testify, or Mr. Wille plants to attempt to elicit testimony that customers told her something like 'I was confused,' the [c]ourt finds that those statements would have to be excluded as they would be offered for the truth of the matter asserted." Tr. 494:23-495:3.

and instructing the jury that salesperson deception evidence 'may be probative to establish customer or purchasing deception or other evidence.'" (D.I. 253 at 20); Tr. 1707:6-7. Specifically, SurgiQuest asserts that no record evidence supported a nexus between salesperson confusion, and that the admission of deposition testimony from SurgiQuest sales representatives about their understanding of smoke filtration and air entrainment improperly allowed Lexion to substitute "salesperson confusion" evidence for actual customer reliance on the false advertising statements. (D.I. 253 at 20); Tr. 586-88. SurgiQuest argues that Lexion asked the court to admit this evidence based on a trademark case *Arrowpoint*, which applies non-purchaser confusion in a multi-factor likelihood of confusion test that is inapplicable here. *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 319-20 (3d Cir. 2015); Tr. 242:15-25. SurgiQuest argues that trademark cases are different because false advertisement cases require a showing of actual confusion caused by misleading statements. *Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 228-29 (3d Cir. 1990).[12]

In contrast, Lexion argues that courts have found salesperson confusion probative because salespersons are in the position to influence a purchasing decision. *Arrowpoint*, 793 F.3d at 323.[13] With respect to each category of false advertising, Lexion provided evidence that salespersons across the country were confused and made false statements to customers consistent with their confusion. Thus, the jury did not need to make an inference because the salespersons made literally

---

[12] At trial, the court acknowledged, without objection, that *Arrowpoint* refers to actual confusion in the trademark context, but that courts often look to the same standard in terms of trademark and false advertising cases. Tr. 242:15-243:3; *Arrowpoint*, 793 F.3d at 313.

[13] Courts across the country have found that confusion by those selling a product may be enough to establish a tendency to deceive because if those selling a product are confused, that is evidence that the consumers, with whom the sale persons interact, will also be confused. *Telechron, Inc. v. Telicon Corp.*, 97 F. Supp. 131, 143 (D. Del. 1951); *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 297 (S.D.N.Y. 2002); *Imagineering Inc. v. Van Klassens Inc.*, 53 F.3d 1260, 1265 (Fed. Cir. 1995); *Interstate Battery System v. Wright*, 811 F. Supp. 237, 243 (N.D. Tex. 1993); *Icon Enterprises Intern., Inc. v. American Products Co.*, 2004 WL 5644805, at *15 (C.D. Cal. Oct. 7, 2004).

false statements, thus, eviscerating the need for any inference. (D.I. 257 at 20.) The court, therefore, finds the jury's award of monetary damages was proper.

### iv. Punitive Damages[14]

Next, SurgiQuest moves for judgment as a matter of law on punitive damages. Punitive damages are ordinarily reserved for the trier of fact. *Jardel Co. v. Hughes*, 523 A.2d 518, 527 (Del. 1987). Punitive damages are recoverable under Delaware law when the defendant's conduct exhibits a wanton or willful disregard for the rights of the plaintiff. *Cloroben Chem. Corp. v. Comegys*, 464 A.2d 887, 891 (Del. 1983). For conduct to be wanton or willful, it must reflect a conscious indifference or an "I don't care" attitude. *Id.* Punitive damages serve a dual purpose— to punish wrongdoers and to deter others from similar conduct. *Jardel*, 523 A.2d at 529 (a jury finding of intentional or recklessly engaging in unfair competition supports an award of punitive damages under Delaware law). The penal aspect and policy considerations require that punitive damages be imposed only after a close examination of whether the defendant's conduct was outrageous because of an evil motive or reckless indifference to the rights of others. *Id.* The defendant's decision must be more than wrong; it must result from a conscious indifference to the decision's foreseeable effect and the defendant must foresee that his unacceptable conduct threatens particular harm to the plaintiff. *Id.*; *Wooleyhan v. Cape Henlopen School Dist.*, 2011 WL 1875710 (D. Del. May 17, 2011).[15]

---

[14] Punitive damages are not recoverable under the Lanham Act. As such, both parties agree that punitive damages fall under state law since they only attach to the unfair competition claim. (D.I. 253 at 22.) The cases SurgiQuest cites in its brief with regard to punitive damages are either not binding to the court or dealing with different areas of law such as Title IV discrimination. Here, the jury returned a verdict finding willful and wanton conduct. The Verdict form said "please enter the amount of punitive damages, if any, you have chosen to award." (D.I. 246.)

[15] Lexion argues that SurgiQuest applies an improper legal standard by relying on *Inter Med. Supplies* because the multi-factor test does not concern the issue of whether punitive damages were properly awarded, but rather, adjusted. (D.I. 257 at 20-21); *Inter Med. Supples v. EBI Med. Sys., Inc.*, 181 F.3d 446, 467 (3d Cir. 1999).

13

SurgiQuest argues that no reasonable jury could find that Lexion presented substantial evidence that SurgiQuest intentionally or reckless interfered with Lexion's business relationships with third parties in an egregious, evil or outrageous manner. (D.I. 253 at 22-23, 25); *Laugelle v. Bell Helicopter Textron, Inc.*, 88 A.3d 110, 125 (Del. Super. 2014). According to SurgiQuest, Lexion provided little to no evidence of how, if at all, the statements deceived customers, particularly given the disclosures about the product to the Food and Drug Administration ("FDA") and in the Instructions for Use ("IFU") provided to customers. Tr. 1029, 1122-24. SurgiQuest argues that most of the statements were isolated incidents, from a handful of sales representatives to a very limited number of customers. Tr. 586-88, 603, 638-39, 652, 654.

In contrast, Lexion argues that the record adequately supports an award of punitive damages because the jury found that SurgiQuest intentionally or recklessly engaged in unfair competition, which is sufficient to support a finding of punitive damages under Delaware law. *Jardel*, 523 A.2d at 529; (D.I. 249); (D.I. 257 at 20.) SurgiQuest's Rule 50(b) motion does not ask the court for a remittitur of damages, but rather requests that the court set aside the verdict in its entirety by requesting the court adjust the award to $0, which is effectively asking the court to set aside the jury verdict. (D.I. 257 at 21); (D.I. 268 at 14.) Additionally, the jury heard evidence about statements made regarding (1) heat and humidity; (2) air; and (3) smoke that support the award of punitive damages.

First, the jury heard evidence that Lexion's Insuflow device heats and humidifies gas so it is delivered at near body temperature and is nearly saturated to reduce hypothermia by preventing the removal of moisture from the patient. Tr. 157, 402. In 2010, SurgiQuest told the FDA that the AirSeal System removed moisture from the patient and keeps tissues moist. (D.I. 257 at 21.) When

14

SurgiQuest launched the AirSeal System, it instructed its sales representatives that AirSeal did "essentially the same thing" as Lexion's Insuflow system. (D.I. 257 at 22.) SurgiQuest did humidity tests in 2012, and its engineer Ralph Stearns concluded that the AirSeal "dehydrates the abdominal cavity . . . chilling the patient," which is the exact opposite of Insuflow. (D.I. 257 at 22); Tr. 400-01, 647-48. After SurgiQuest's Chief Executive Officer ("CEO") and head of marketing learned about the test results, Lexion argues that SurgiQuest still instructed its sales representatives to state that AirSeal performed essentially the same function as Insuflow. (D.I. 257 at 122.)

Second, Lexion asserts that SurgiQuest knew by 2010 that AirSeal would suck air into the abdomen and by 2012, SurgiQuest's CEO knew from internal testing that the abdomen could be filled with as much as 70% air. DTX-78 at SQ38050; JTX-7 at SQ41793, 798. The engineering specifications for the product also revealed that gas, and thus smoke when present in the abdomen, would leak right out of the trocar. Tr. 686. Regardless, SurgiQuest called its product an "AirSeal" despite their knowledge that the AirSeal did not preclude the passage of fluids. For decades surgeons knew that trocars had seals which, in the words of SurgiQuest's expert's patent, "preclude the passage of fluids." Tr. 1419-20. According to Lexion, SurgiQuest knowingly and falsely claimed that the AirSeal maintained stable pneumoperitoneum when they previously advertised that this meant no gas could escape during a procedure. (D.I. 257 at 23.)

Lexion also asserts that SurgiQuest went out of its way to conceal the truth by training its sales representatives that the AirSeal did not suck air into the abdomen and that gas and smoke did not escape from the AirSeal trocar due to the "AirSeal" functionality. Tr. 286-87, 587-88, 591, 663-64, 789-90. When customers made inquiries, the sales representative did demonstrations to show

that no air could get sucked into the abdomen. *Id.* at 574, 591, 607-08, 610-15, 643-45. Evidence at trial suggested that SurgiQuest concealed the truth from consumers because they knew the AirSeal capability was an important selling point and if they told the truth there would be "doctors that look at you like you just ran their mother over in a car" and it would lead to a decline in sales. Tr. 672, 799, 811. SurgiQuest knew that when Stryker backed out of a potential acquisition of SurgiQuest, calling the air entrainment issue a "serious problem," that their sales numbers would be much less if people knew the truth. DTX-168 at SQ58576. Stryker was concerned about subcutaneous emphysema and SurgiQuest knew that air could exacerbate subcutaneous emphysema. Tr. 689, 1145. Altering the concentration of carbon dioxide gas in the abdomen is "typically undesirable for the safety of the patient." DTX-1 at 2:51-58. Beyond increasing the impact of subcutaneous emphysema, pneumothorax, and pneumomediastinum, air may increase the risk of infection and the risk of a fire or explosion. Tr. 834-35, 1087; (D.I. 257 at 24.)

Finally, Lexion asserts SurgiQuest knew that smoke could escape through the top of the trocar and that the filter it was using regarding surgical smoke was a particle filter that could not filter out toxic and carcinogenic gasses. Tr. 1151, 1131-32. Regardless, evidence showed that SurgiQuest trained its sales representatives that AirSeal removed carcinogenic gasses from the smoke. Tr. 774, 1349-50. SurgiQuest advertised that AirSeal provided "smokeless laparoscopy," and that surgeons and operating personnel were protected from the danger of surgical smoke, while knowing this was false. Tr. 654, 773. According to Lexion, the falsehoods jeopardized safety of both the patient and the operating room staff and this course of conduct exceeds the standard of egregious, intentional conduct for which punitive damages may be awarded. (D.I. 257 at 24-25.)

Because Lexion presented sufficient evidence at trial to support a conclusion that punitive

damages were warranted and the jury concluded that SurgiQuest intentionally or recklessly engaged in unfair competition, the court concludes that the evidence at trial was sufficient to support a verdict awarding Lexion punitive damages.

### v. Lexion's Motions

Lexion filed five post-trial motions that remain pending: A motion for permanent injunction, disgorgement of profits, attorney's fees, prejudgment interest, and post-judgment interest. (D.I. 256.) The court will grant the motion for postjudgment interest and deny the remaining four motions.

#### 1. Permanent Injunction

SurgiQuest argues that the trial evidence does not support a permanent injunction. (D.I. 258 at 3.) A plaintiff may obtain a permanent injunction by demonstrating (1) it has suffered an irreparable injury; (2) that remedies at law are inadequate to compensate for that injury; (3) that the balance of hardships favors a remedy in equity; and (4) that the public interest would not be disserved by an injunction. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *Ferring Pharm.*, 765 F.3d at 205. In the context of false advertising, to prove the need for an injunction, the irreparable harm must have a nexus to the false advertising statements. *Warner-Lambert*, 204 F.3d at 93; *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharm. Co.*, 290 F.3d 578, 595 (3d Cir. 2002). The court will address each factor in turn.

##### i. *Injury Suffered & Remedies at Law to Compensate for Injury*

The court will address the first two factors—injury suffered and remedies at law to compensate for injury—together. Lexion argues that it is irreparably harmed regardless of which false

17

advertising statements made by SurgiQuest impacted a purchasing decision because, either way, it has lost market position while Plaintiff has gained market position. Tr. 751; (D.I. 256 at 2.) According to Lexion, loss of market share alone is sufficient evidence of irreparable harm not compensable by monetary damages. *Novartis*, 290 F.3d at 596 (discussing preliminary injunctions); (D.I. 256 at 2.) Lexion asserts that damages are an inadequate remedy due to the change in market position because it is impossible to determine how much it has been damaged (1) by having to spend time trying to regain accounts that would not have been lost in the absence of false advertisement; (2) due to the opportunity cost of spending time trying to regain lost accounts versus developing new ones; and (3) because owners of the AirSeal System may choose to keep using the product instead of returning to Defendant's product since they have spent a considerable amount of money purchasing the AirSeal System. (D.I. 256 at 2.)

SurgiQuest argues that Lexion's brief ignores the requirement that the irreparable harm must be caused by the false advertisement statements. *See Warner-Lambert*, 204 F.3d at 93; (D.I. 258 at 3.) SurgiQuest argues that the "incompatibility of Lexion's products with other products on the market (including SurgiQuest's) may decrease Lexion's sales, but this has nothing to do with false advertising." *Toro Co. v. Textron, Inc.*, 499 F. Supp. 241, 254 (D. Del. 1980); (D.I. 258 at 8.) SurgiQuest argues that because the jury found that it did not violate the Delaware Deceptive Trade Practices Act, which requires that there be a pattern of deceptive conduct not merely isolated statements or conduct, that the statements cannot be the cause of on-going or irreparable harm. Tr. 1710; 1782:18-21; (D.I. 258 at 9.) The court agrees. Because the statements are not the cause of on-going harm, the court finds that these factors weigh against an injunction.

### ii. Balance of Hardships

Lexion asserts it has faced declining sales in the marketplace for several years while Plaintiff faces little hardship and, therefore, SurgiQuest should conform its advertising so that it is not misleading. (D.I. 256 at 4.) *Groupe SEB USA, Inc. v. Euro-Pro Operating, LLC*, 774 F.3d 192, 204 (3d Cir. 2014); *Opticians Ass'n. v. Independent Opticians*, 920 F.2d 187, 197 (3d Cir. 1990). Conversely, SurgiQuest argues that enjoining the use of the tradename "AirSeal" would require CONMED to change the registration of the device with government agencies, including the FDA, and change the marketing of all of the products it has sold and distributed. Tr. 1122-23; (D.I. 258 at 10-11.) While SurgiQuest has registered and used the tradename "AirSeal" since 2009, Lexion did not plead any claims on this tradename until 2016, nor any damages before 2013. *Id.* The only hardship Lexion identifies in its brief is its declining sales and purported irreparable harm in the marketplace. *Id.* This factor, thus, weighs against an injunction.

### iii. Public Interest Factor

Lexion argues "the public interest is served by preventing customer confusion or deception." *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1321 (11th Cir. 2010); *Opticians Ass'n.*, 920 F.2d at 197-98. According to Lexion, the false advertising impacts safety of patients and the operating room staff, and is, therefore, a public interest in having informed surgeons regarding the truth about medical devices so they can protect themselves and patients. (D.I. 256 at 5.) SurgiQuest argues that the public interest would be disserved by an injunction because prominent laparoscopic surgeons in top United States hospitals use AirSeal. Tr. 873-77, 1005, 1009, 1169, 1240; (D.I. 258 at 12.) An injunction could impact the surgical community's access to the insufflators, trocars and tubing, which could impact the quality of laparoscopic surgeries, including robotic surgeries that

are performed with the AirSeal each day. (D.I. 256 at 5.) According to SurgiQuest, there is a dearth of evidence that consumers were confused or deceived by any of the statements included in Lexion's motion. Tr. at 421-23, 477-79, 617, 737, 922, 982-85, 1601. Because surgeons across the country are using both products, the court finds this factor weighs against a permanent injunction. The court, therefore, denies the motion for a permanent injunction.

### 2. Disgorgement of Profits

The Lanham Act permits disgorgement of the defendant's profits where it does not result in a double recovery to the plaintiff. 15 U.S.C. § 1117(a); *Calloway Gold Co. v. Slazenger*, 384 F. Supp. 2d 735, 740-41 (D. Del. 2005). The Third Circuit has outlined three independent rationales pursuant to which the court may award disgorgement of profits: (1) unjust enrichment; (2) damage; or (3) for deterrence purposes. *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 177-78 (3d Cir. 2005). "These rationales are stated disjunctively; any one will do." *Id.* The Third Circuit evaluates the following factors set out in *Banjo Buddies* in determining whether disgorgement is an appropriate equitable remedy in a Lanham Act case: "(1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off. *Banjo Buddies*, 399 F.3d at 175.[16] The court will address each factor in turn.

The first factor, intent to confuse or deceive, weighs in favor of disgorgement. The jury found that SurgiQuest intentionally or willfully made a false advertising statement, and intentionally or

---

[16] The sixth factor—whether it is a case of palming off—is not applicable to false advertising. (D.I. 256 at 8); *Banjo Buddies*, Inc., 399 F.3d at 175.

recklessly engaged in unfair competition. (D.I. 256 at 8.)

The second factor, diversion of sales, weighs against disgorgement. Lexion asserts that since the false advertising began, its sales have declined while SurgiQuest's have increased. (D.I. 256 at 8.) According to Lexion, sales representatives testified that it lost accounts when the customer was led to believe that the product heated and humidified or did not allow air to be sucked into the abdomen. Tr. 291-93, 304-05, 502-07; (D.I. 256 at 8.)

In contrast, SurgiQuest argues that the record does not support a finding of any causal connection between sales lost by Lexion and SurgiQuest's statements presented at trial. Lexion's trial evidence showed a wide variety of reasons completely independent of SurgiQuest, such as cost, contracts, product failures and surgeon preference that contributed to Lexion's declining revenues. (D.I. 258 at 18.) Moreover, Lexion's argument of incompatibility between Lexion and SurgiQuest products is a legitimate and lawful business fact, which cannot support damages or a theory of diverted sales for false advertising. *Toro Co.*, 499 F. Supp. at 254; *Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 666 (D. Del. 2008). Testimony from both Lexion and SurgiQuest witnesses demonstrated that the selection of which device to use was a matter of surgeon preference. Tr. 732-37, 874-75, 881, 906.

The third factor, adequacy of other remedies, weighs against disgorgement. Lexion argues that while it was able to show that sales have been diverted, proving the extent of the damages is difficult because many customers do not tell Lexion why they switched products and deposing each customer is impractical. (D.I. 256 at 8.) According to Lexion, it is, therefore, impossible to measure the impact on Lexion of customers switching to SurgiQuest and having the sunk cost of the Airseal IFS. (D.I. 256 at 8-9.) Lexion argues it will be difficult to get these customers back and

21

that such uncertainty justifies disgorgement. *Merck Eprova AG v. Gnosis S.p.A.*, 901 F. Supp. 2d 436, 460 (S.D.N.Y. 2012) (awarding increased profits because a profits award cannot fully capture the loss of market share, customer loyalty, and potential customers), *aff'd* 760 F.3d 247 (2d Cir. 2014); (D.I. 256 at 8.)

SurgiQuest argues, that to the extent any damages are due, the jury's award has provided Lexion with an adequate remedy. Lexion argued lost profits as a remedy and never argued to the jury that this would be inadequate compensation. Lexion's corporate management admitted that it never achieved more than a 4-5% market share over the entire lifetime of the products, even when SurgiQuest was not on the market. Tr. at 208, 741. Its own CMO admitted that only 1-2% percent of surgeons even want the heated and humidified gas that Lexion's accessories provide. *Id.* at 1424. Lexion argued to the jury that despite these facts, it should reap 95% of SurgiQuest's revenue as damages. The jury disagreed. (D.I. 258 at 18-19.)

The fourth factor, unreasonable delay by Plaintiff in asserting his rights, weighs against disgorgement. While Lexion wrote a letter to SurgiQuest when it became aware of the false advertising, the court finds that it delayed in filing several years. Tr. 164-66; (D.I. 258 at 9.) Lexion did not plead any false advertising claims concerning air entrainment (including the trademark AirSeal) or smoke statements until May 2016, more than 2 years after the litigation commenced. (D.I. 158.) Yet Lexion argued at trial that SurgiQuest's false statements began at least as early as 2012, and even relied on information publicly available in 2009-2010. Tr. 164 ; *Id.* at 1119. Lexion points to a letter it wrote in 2012 as evidence of lack of delay, but this letter has nothing to do with air or smoke statements and points only to a single statement on SurgiQuest's website about heat and humidity concerning shoulder pain–one that Lexion did not raise at trial as false advertising.

(D.I. 258 at 9.)

The last factor—public interest making the misconduct unprofitable—weighs in favor of disgorgement. Lexion argues that the false advertising claims implicate patient safety, thus, the public interest in making the misconduct unprofitable is heightened because of the potential impact on patient safety. (D.I. 256 at 9.) According to Lexion, patient safety is threatened because neither they nor their surgeons were provided the truth about the SurgiQuest AirSeal System. (D.I. 256 at 9.) According to Lexion, false advertising "interferes with the consumer's ability to make informed purchasing decisions." *Banjo Buddies*, 399 F.3d at 176.

SurgiQuest argues that this factor weighs against disgorgement because there is (1) a lack of causation between any of the false advertising statements and an impact on Lexion and/or customers generally; and (2) lack of clarity as to which of the statements were deemed false advertising by the jury. (D.I. 253); (D.I. 258 at 19-20.)[17] SurgiQuest asserts that most statements were isolated, sporadic, and corrected by the company prior to trial, and/or Lexion failed to provide any evidence that the statements had any impact on customers or the public at large. Lexion's argument as to patient safety is baseless. The FDA reviewed and approved a number of the statements Lexion pointed to at trial. Tr. at 204-05, 921, 1122-23. Lexion complained to the FDA which took no action. Tr. 202-04, 1426. Moreover, surgeons from top hospitals use the AirSeal device routinely including top robotic surgeons at the hospital at which Lexion's own expert, Dr. Redan, works. Tr. at 1058-59, 1169, 1240, 873-77.

The court, therefore, will not order the disgorgement of profits.

---

[17] SurgiQuest asserts in its brief that this factor "weighs against injunction." (D.I. 258 at 19.) The court believes that SurgiQuest means that this factor weighs against disgorgement since any other interpretation is nonsensical.

### 3. Attorney's Fees

Section 35(a) of the Lanham Act provides that the court may award attorney's fees in exceptional cases. 15 U.S.C. § 35(a); 15 U.S.C. § 1117. In 2014, the Supreme Court commented on 35 U.S.C. § 285 of the Patent Act and loosened the preexisting standard for what makes a case "exceptional" in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014). The Court of Appeals for the Third Circuit has stated that *Octane Fitness* controls the interpretation of § 35(a) of the Lanham Act, because it is identical to § 285 of the Patent Act. *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 314-15 (3d Cir. 2014). The Supreme Court has held that an "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1756; *see also Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (2005) (discussing the previous standard). Ultimately, the court must make a discretionary decision based on the totality of circumstances. *See id.* Hence, § 285 allows district courts to exercise their discretion in determining, on a case-by-case basis and "considering the totality of the circumstances," whether a case qualifies as "exceptional." *Id.* The Supreme Court also rejected application of the clear and convincing standard, requiring that a party moving for attorney fees must demonstrate, by a preponderance of the evidence, that a case is "exceptional." *Octane Fitness*, 134 S. Ct. at 1758.[18]

The award of attorneys' fees therefore turns on whether this case is exceptional. In light of the totality of the circumstances, the court finds that it is not exceptional and does not rise to a level

---

[18] Lexion asserts that because it was unsure how SurgiQuest was planning on pursuing its case, it spent time and money addressing SurgiQuest's allegations in its expert requests. (D.I. 256 at 23.) Lexion argues that, at best, SurgiQuest asserted that a graph Lexion created illustrating complication rates experienced by patients treated with the AirSeal System was false or misleading. (D.I. 256 at 24.) The jury rejected this claim. (D.I. 249.)

of bad faith or vexatious litigation that warrants an award of attorneys' fees and costs. *Octane Fitness*, 134 S. Ct. at 1756. The court finds that this case does not "stand out from others" with respect to the "substantive strength" of Lexion's position, nor the substantive weakness of SurgiQuest's. Instead, both sides' positions had substantial merit, and this was a case that, quite understandably, went to trial—a trial at which either side could have prevailed. Nor does this case "stand out from others" with respect to "the unreasonable manner" in which it was litigated. While the case has been hotly contested, and has been marked by a tremendous number of disputes, these are typical realities of high-stakes litigation between competitors in a market presenting an opportunity for enormous profits. For the most part, both sides defended their respective positions throughout this litigation in apparent good faith. The court, therefore, finds that no party is entitled to an award of attorneys' fees and costs in this case and, thus, denies Lexion's motion.

### 4. Prejudgment & Postjudgment Interest

Lexion requests the court exercise its discretion and award prejudgment interest, and it seeks postjudgment interest pursuant to 28 U.S.C. § 1961 "in an amount to be determined based upon the final award of compensation owed to Lexion by SurgiQuest." (D.I. 256 at 24-25); *Merck Eprova A.G. v. Gnosis S.p.A.*, 760 F.3d 247, 263-64 (2d Cir. 2014). "[T]he decision whether to award prejudgment interest [is left] to the sound discretion of the District Court." *Motel 6 Operating LP v. HI Hotel Group LLC*, 670 Fed. App'x. 759, 760 (3d. Cir. 2016) (even if the court finds a case exceptional under § 1117 for purposes of attorney's fees, it is not required to award prejudgment interest). Similarly, the Court of Appeals for the Second Circuit has explained that "Although Section 1117(a) does not provide for prejudgment interest, such an award is within the discretion of the trial court and is normally reserved for 'exceptional' cases." *Am. Honda Motor*

*Co., Inc. v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d Cir. 1990).

Both parties agree that the any prejudgment interest award would only apply to the compensatory portion of the damages. W.*R. Grace & Co.—Conn. v. Intercat, Inc.*, 60 F. Supp. 2d 316, 332 (D. Del. 1999); (D.I. 258 at 24); (D.I. 270 at 15.) Here, Lexion has neither proven SurgiQuest's undue delay in filing suit or that it has been prejudiced. Lexion argues that because it is undisputed that Plaintiffs were aware of their possible claim for infringement as early as 1999, but did nothing to bring suit until 2014, the prejudgment interest should be denied. (D.I. 257 at 27.) The parties dispute when Plaintiffs learned of the infringement. This dispute, in light of the record, undermines the undue delay argument. The court, therefore, finds that this case is not exceptional and, thus, the court will not award prejudgment interest.

Under 28 U.S.C. § 1961(a), post-judgment interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 798 F. Supp. 2d 541, 548 (D. Del. 2011) (Sleet, J.). Accordingly, the court will grant the postjudgment interest at the applicable statutory rate.

## V.    CONCLUSION

For the reasons stated above, the court will deny all of SurgiQuest's motions as well as Lexion's motions for permanent injunction, disgorgement of profits, attorneys' fees, and prejudgment interest and grant Lexion's motion for postjudgment interest.

Dated: May 16 , 2018

_____
UNITED STATES DISTRICT JUDGE